JOHNSON ET AL., APPELLEES, *v.* MAXWELL ET AL., APPELLANTS.

138

(Nos. 2354 and 2374—Decided August 10, 1988.)

*Frank Cicconetti,* for appellees.
*Edward K. Eberhart,* for appellants.

MAHONEY, P.J. Larry D. Maxwell, Charles S. Swysgood and S.M.S. Investments (collectively "S.M.S."), defendants-appellants, challenge two trial court orders granting judgment to the plaintiffs-appellees herein, Ben and Eleanor Johnson (the Johnsons). We affirm.

### Facts

The Johnsons owned certain real property located in Wayne County, Ohio. On December 21, 1979, the Johnsons and S.M.S entered into an agreement whereby the Johnsons agreed to sell and S.M.S. agreed to buy the Wayne County property, along with certain equipment located in the building on said property.

Pursuant to the terms of the agreement, the sale price in the transaction was $100,000. S.M.S. agreed to make a $20,000 down payment and agreed to pay off the balance at a rate of $1,544.01 per month, including interest on the unpaid balance of a rate of "10-1/2" percent per annum. The Johnsons agreed to convey clear title to the property in controversy to S.M.S. "upon completion of this contract * * *."

The original agreement was subsequently amended on two occasions. On March 31, 1980, the parties entered into an agreement whereby the interest rate recited in the original agreement was corrected to be "10-1/2" percent per annum. On December 21, 1982, the parties entered into a second agreement amending the terms of their original agreement. This amended agreement provided, *inter alia,* that S.M.S owed the Johnsons an additional $36,100 over and above the balance of its existing debt. The agreement also provided for interest on the debts at a rate of 10-1/2 percent per annum and monthly installments of $1,544.01.

S.M.S. eventually became in default of its obligations. On February 17, 1987, the Johnsons sent S.M.S. a notice of forfeiture of the land installment contract, "pursuant to Section 5313.06, Ohio Revised Code." On May 5, 1987, the Johnsons initiated the action *sub judice.* The matter was tried to the court on October 21, 1987. In a judgment entry dated December 30, 1987, the court held that a total of $93,943.31 was due and owing the Johnsons, ordered that the "land contract as amended on December 21, 1982 is cancelled and held for naught * * *"; ordered that the real property in controversy be sold and the proceeds be applied to any unpaid real estate taxes and the balance owing the Johnsons. The court also ordered that the Johnsons "be placed in immediate possession of the real estate * * *."

It is noteworthy that the trial court's December 30 entry did not actually grant judgment in the sum of $93,943.31 to the Johnsons. Rather, the entry merely indicated that the trial court found that amount to be "due and owing" by S.M.S. to the Johnsons. This apparent oversight was corrected in an entry, *nunc pro tunc,* dated January 27, 1988. In that same entry, the trial court also denied a motion by S.M.S. to quash the Johnsons' "Precipe for Certification of Judgment" and "Precipe for Writ of Execution."

On January 28, 1988, S.M.S. filed a notice of appeal from the trial court's December 30, 1987 judgment entry. A sheriff's sale of the real property in controversy was subsequently conducted, with Eleanor Johnson submitting the highest bid in the amount of $52,000. In an entry dated March 23, 1988, the trial court confirmed the sale, ordered a distribution of the proceeds, and granted the Johnsons a deficiency judgment in the sum of $46,324.17.

S.M.S. filed a notice of appeal of the trial court's March 23 order on March 24, 1988. This court subsequently consolidated the two appeals filed by S.M.S. On appeal, S.M.S. makes two assignments of error. Since these assignments of error are interrelated, we shall address them jointly.

Assignments of Error

"1. The trial court erred to the prejudice of the appellants by granting a personal judgment in its order of December 30, 1987, as modified by its order of January 27, 1988, and by granting a deficiency judgment against the appellants in its order of March 23, 1988.

"2. The trial court erred to the prejudice of the appellants by ruling that Chapter 5313 of the Ohio Revised Code does not apply to this transaction."

In both of these assignments of error, S.M.S. challenges the propriety of the trial court granting a judgment and a deficiency judgment in favor of the Johnsons. The gravamen of S.M.S.'s complaint is that the trial court should have merely ordered a forfeiture of the real property in controversy, rather than granting a judgment and ordering a sale of the premises.

Prior to initiating this action, the Johnsons caused a "Notice of Forfeiture," which cited R.C. 5313.06, to be served upon S.M.S. However, in their complaint, the Johnsons clearly sought relief in the form of foreclosure. In its order of December 30, 1987, the trial court held that R.C. Chapter 5313 was not applicable to the land contract in controversy. Although S.M.S. now contends that the trial court erred in this regard, we do not agree.

R.C. 5313.01 provides in pertinent part:

"As used in Chapter 5313. of the Revised Code:

"(A) 'Land installment contract' means an executory agreement which by its terms is not required to be fully performed by one or more of the parties to the agreement within one year of the date of the agreement and under which the vendor agrees to convey title in real property located in this state to the vendee and the vendee agrees to pay the purchase price in installment payments, while the vendor retains title to the property as security for the vendee's obligation. Option contracts for the purchase of real property are not land installment contracts.

"(B) 'Property' means real property located in this state improved by virtue of a dwelling having been erected on the real property."

We have previously recognized that the use of the word "dwelling" in this statute results in a distinction being made between residential and commercial properties. See *Akron First Seventh Day Adventist Church* v. *Smith* (Sept. 27, 1984), Summit App. No. 11577, unreported, citing *DiYorio* v. *Porter* (June 24, 1981), Mahoning App. No. 81 C.A. 5, unreported. R.C. Chapter 5313 has no application to purely commercial properties. *DiYorio, supra.*

In the case *sub judice*, the trial court found that "[t]here is no dispute that no dwelling exists on the land covered by the contract in question * * *." On appeal, S.M.S. is unable to

cite any record evidence contra to this finding. Consequently, the trial court's determination that R.C. Chapter 5313 was inapplicable to this controversy is affirmed.

S.M.S. also claims that, under the common law of Ohio, the trial court committed reversible error by granting a judgment to the Johnsons and ordering that the property be sold. S.M.S. contends that the court should have merely ordered a forfeiture in favor of the Johnsons. We do not agree.

In the case *sub judice*, S.M.S., the vendee in default, is asserting that forfeiture is the proper remedy for the Johnsons, the vendors. Forfeitures have been heavily criticized by legal scholars in the context of land installment contracts. See, *e.g.*, Note, Land Contracts in Ohio — The Need for Reform (1962), 13 Case W. Res. L. Rev. 554.

Forfeiture clauses contained in land installment contracts are enforceable in Ohio, so long as the resulting benefit to the vendor is not "extravagantly unreasonable or manifestly disproportionate to the actual damages sustained" by the vendor. *Norpac Realty Co.* v. *Schackne* (1923), 107 Ohio St. 425, 140 N.E. 480, paragraph one of the syllabus. However, other remedies are favored and forfeiture clauses are rarely strictly enforced by modern Ohio courts. In *Woloveck* v. *Schueler* (1922), 19 Ohio App. 210, 218-219, this court outlined several remedies available to vendors and stated:

"Where there has been a breach of the contract by the vendee's failure to make the payments specified in the contract, the vendor may bring an action against the vendee for the payments due, recover judgment therefor, levy upon the land and sell the same to satisfy such judgment, thereby extinguishing the equity of the vendee in such land. The vendor may also treat the transaction as giving to him a lien upon the premises in the nature of an equitable mortgage, and he may bring an action to foreclose the same and obtain an order requiring the vendee to pay the balance due by a certain time, and, in default thereof, have the premises sold to satisfy the claim of vendor for the balance due on the contract. Where the vendee is in possession and a substantial part of the purchase price has been paid, this is the equitable and fair procedure to adopt.

"Where the contract * * * provides for a forfeiture, which the vendor may declare, he may declare such forfeiture and bring an action at law in ejectment to recover the possession of the premises, but in such case the vendee may by answer set up facts, if they exists, which will justify a court of equity in relieving him against the consequences of the forfeiture."

In the case *sub judice*, the original agreement and the 1982 amended agreement of the parties each provided for a different remedy in case of default by the vendee. The original agreement provided in pertinent part:

"If any installment payment to be made by the Vendee under the terms of this contract is not paid by the Vendee when due or within thirty (30) days thereafter, the Vendor may initiate forfeiture of the interest of the Vendee in default, as provided by law."

However, the 1982 amended agreement stated:

"If any installment payment to be made by the Vendee under the terms of this Amendment is not paid by Vendee when due or within thirty (30) days thereafter, then all of said installments remaining unpaid shall at once become due and payable at the option of Vendor."

Reading these contractual provisions *in pari materia,* the vendor could *either* declare a forfeiture *or* accelerate the debt and foreclose on the property

in the event of a default by the vendee. The trial court merely enforced the acceleration clause, as requested in the Johnsons' complaint.

Citing our previous holding in *Rowland* v. *Finkel* (1987), 33 Ohio App. 3d 77, 514 N.E. 2d 949, S.M.S. contends that the trial court erred by both granting judgment to the Johnsons and cancelling the contract, as amended. However, unlike the situation in *Rowland, supra,* the trial court in the case *sub judice* ordered that the property be sold and the proceeds applied to the judgment. While the Johnsons were granted "possession" of the premises, a sheriff's sale of the realty was contemplated in the order and, in fact, occurred on March 2, 1988.

Since the proceeds resulting from the sheriff's sale were insufficient to satisfy the Johnsons' judgment against S.M.S., we fail to see any error by the trial court in granting a deficiency judgment to the Johnsons. There is no indication that the sale was not conducted in accordance with the law.

Summary

S.M.S.'s assignments of error are overruled. The orders of the trial court appealed from are affirmed.

*Judgments affirmed.*

QUILLIN and GEORGE, JJ., concur.