[Cite as *Kassoudji v. Stamps*, 2016-Ohio-7693.]

## IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

| | | |
|---|---|---|
| SHIRLEY A. KOSSOUDJI | : | |
| | : | |
| *Plaintiff-Appellee* | : | Appellate Case No. 27170 |
| | : | |
| v. | : | Trial Court Case No. 2014-CV-4211 |
| | : | |
| RICK D. STAMPS, et al. | : | (Civil Appeal from |
| | : | Common Pleas Court) |
| *Defendants-Appellants* | : | |
| | : | |

. . . . . . . . . . .

# O P I N I O N

Rendered on the 10th day of November, 2016.

. . . . . . . . . . .

MATTHEW C. SORG, Atty. Reg. No. 0062971, 40 North Main Street, Suite 2700, Dayton, Ohio 45423
    Attorney for Plaintiff-Appellee

F. HARRISON GREEN, Atty. Reg. No. 0039234, 4015 Executive Park Drive, Suite 230, Cincinnati, Ohio 45241
    Attorney for Defendants-Appellants

. . . . . . . . . . . .

WELBAUM, J.

{¶ 1} In this case, Defendants-Appellants, Rick and Irma Stamps (collectively, "the Stamps"), appeal from a decision denying their Civ.R. 60(B) motion for relief from judgment. In support of their motion, the Stamps contend that the trial court erred in overruling the motion because their failure to appear for trial constituted excusable neglect. The Stamps also contend that their motion should have been granted pursuant to Civ.R. 60(B)(4), because the judgment against them has been satisfied.

{¶ 2} We conclude that the trial court did not err in overruling the motion based on Civ.R. 60(B)(1), but did err in denying relief under Civ.R. 60(B)(4). Accordingly, the judgment of the trial court will be reversed, and this cause will be remanded for further proceedings.

I.  Facts and Course of Proceedings

{¶ 3} In July 2014, Plaintiff-Appellee, Shirley Kossoudji, filed a complaint for money damages against the Stamps. Kossoudji alleged in the complaint that she was the deeded owner of premises known as 1915-1927 Troy Street, Dayton, Ohio, and had entered into a land contract with the Stamps in 2010 for their purchase of the property. The purchase price was $115,000, with interest accruing on the unpaid balance at 8% per annum from the commencement date of the contract.

{¶ 4} Under the contract, the Stamps agreed to pay $849 per month for 60 months beginning January 1, 2010, with a final balloon payment of $101,521 due at the end of the 60-month period. Late charges of 5% were assessed for untimely payments, and the Stamps were also required to pay one-twelfth of the annual real estate taxes in equal

monthly installments for the term of the contract. In addition, the Stamps agreed to maintain liability, fire, and extended insurance on the premises, and to keep the premises in good condition. Any structural change or alteration to the premises could not be made without the owner's prior written approval.

{¶ 5} Further, the contract allowed Kossoudji to declare all remaining installments and amounts provided by the contract immediately due upon the Stamps' failure to pay an installment of the purchase price when due, or upon their failure to comply with any of the terms of the contract.

{¶ 6} According to the complaint, the Stamps had not made payments since July 2013, and had failed to remedy the default after being notified. The complaint also alleged that the Stamps failed to pay real estate taxes and had made significant structural changes, including destruction of an improved structure on the property. Two claims for relief were included in the complaint. One was a request for an amount of $118,145.43, based on past-due installments and taxes, plus acceleration of the balloon payment. The second claim was based on the demolition of the structure on the property and significant environmental harm, which allegedly had caused diminution in the property's value in excess of $25,000.

{¶ 7} On August 21, 2014, the Stamps' attorney, Thomas Kendo, filed an answer on their behalf and a request for mediation. After Kossoudji served requests for production of documents and for admissions on the Stamps, the court referred the case to a magistrate and set a scheduling conference for October 10, 2014. Based on this conference, the magistrate filed a final pretrial order on October 15, 2014, setting deadlines for discovery and filing summary judgment motions. The order also set a trial

date of February 25, 2015.

{¶ 8} The final pretrial order, which was sent to the parties' attorneys through the court's e-filing system, contained the following statement:

> **FAILURE TO APPEAR AT THE TRIAL, OR FAILURE TO HAVE A WELL INFORMED SUBSTITUTE AVAILABLE, WILL RESULT IN DISMISSAL OF THE ABSENT PARTIES' CLAIMS FOR FAILURE TO PROSECUTE UNDER CIVIL RULE 41(B)(1), OR, IF APPROPRIATE, THE CASE WILL PROCEED WITHOUT THE ABSENT PARTY OR COUNSEL. COUNSEL AND/OR PARTIES WHO FAIL TO APPEAR MAY ALSO BE SUBJECT TO OTHER APPROPRIATE SANCTIONS.**

(Bolding and all-capitals format in original). October 15, 2014 Final Pretrial Order, Doc. #25, p. 3.

{¶ 9} On December 1, 2014, Kossoudji filed a motion for partial summary judgment, based on Kossoudji's affidavit and the Stamps' responses to the request for admissions and the interrogatories. The Stamps then filed a request for an extension of time to respond, and received an extension to January 5, 2015. However, the Stamps did not file a timely response. On January 20, 2015, the Stamps filed another motion to extend the response time to January 23, 2015. The court granted an extension to January 20, 2015, and the Stamps then filed an untimely response on January 23, 2015.

{¶ 10} On January 23, 2015, attorney Andrew Engel, who was associated with Kendo's firm, entered his appearance as co-counsel for the Stamps. Subsequently, Kossoudji filed her identification of trial exhibits on January 26, 2015, and later objected to any trial exhibits that the Stamps would proffer, based on their failure to identify exhibits

in accordance with the pretrial order. Kossoudji also filed her pretrial statement on February 11, 2015. The Stamps did not file a pretrial statement.

{¶ 11} On February 11, 2015, the Magistrate filed a decision denying Kossoudji's partial motion for summary judgment. The decision noted that the Stamps had admitted these matters: entering into the land installment contract; not making any payments since June 2013; and failing to timely remedy their default. However, the magistrate concluded that a genuine issue of material fact existed regarding damages, because Kossoudji failed to offer an accounting on which the court could rely to decide damages. The magistrate's decision further noted that trial was set for February 25, 2015, and that the decision was electronically filed with the court's e-filing system. In addition, the decision stated that the system would post a record of the filing to the e-filing account "Notifications" tab of several participants, including Kendo and Engel. February 11, 2015 Magistrate's Decision, Doc. #42, p. 6.

{¶ 12} The trial was held on February 25, 2015, but the Stamps did not appear for trial. Their attorneys also did not appear. On April 3, 2015, the magistrate filed a decision, noting these facts, and further noting that Kossoudji had appeared for trial and had presented uncontroverted evidence as to her ownership of the real estate. The magistrate also observed that Kossoudji had clearly and convincingly proven that the Stamps were in breach of contract for non-payment. In addition, the decision stated that Kossoudji had provided an accounting that was entered into evidence, and that the damages based on breach of contract were $133,929.44. The magistrate then awarded Kossoudji that amount, plus statutory interest from February 25, 2015. Again, a copy of the decision was posted to the e-filing system and distributed to the Stamps' attorneys.

{¶ 13} An amended magistrate's decision was filed on April 15, 2015. This decision indicated that Kossoudji had orally moved for default judgment and had established a prima facie case as to the relief requested. The amended decision added that the land installment contract was in default and was null and void. As a result, the magistrate ordered the Stamps to quit-claim their interest in the property within seven days, and if the Stamps failed to do so, the magistrate's decision and judgment entry adopting the decision would serve as a properly executed conveyance in lieu of the document regularly required for such conveyance and transfer. This decision was also filed and sent electronically to the parties' attorneys.

{¶ 14} On April 27, 2015, the Stamps' attorney filed a motion for an extension of time to file objections to the magistrate's amended decision. The court granted the motion, and gave the Stamps until May 12, 2015, to file their objections. However, no objections were filed, and on May 15, 2015, the trial court filed a judgment entry adopting the magistrate's decision dated April 15, 2015. The court, therefore, awarded Kossoudji $133,929.44, plus statutory interest from February 25, 2015, and also ordered the Stamps to quit-claim their interest in the property within seven days. Again, the court stated that upon the Stamps' failure to quit-claim the property, the magistrate's decision and court's entry adopting the decision would operate as a properly executed document conveying the property.

{¶ 15} After stating that the order was a final appealable order, and that there was no just reason for delay, the trial court directed the clerk to serve each party with notice of the entry of judgment and its date of entry on the journal. As before, the court posted its judgment on the e-filing system, with notification to Kendo and Engel.

{¶ 16} On May 18, 2015, the clerk filed the 58(B) notice, as directed. Kossoudji then filed a praecipe for a certificate of judgment against the Stamps on June 10, 2015. No appeal was taken from the judgment of the court that had been filed on May 15, 2015.

{¶ 17} Subsequently, on March 21, 2016, the Stamps, using different counsel, filed a motion for relief from judgment, based on Civ.R. 60(B)(1) and (4). The motion was supported by the affidavit of Rick Stamps, who denied knowing that his attorneys would not be present at the trial on February 25, 2015. After further memoranda were filed, the court held an evidentiary hearing on June 3, 2016, at which Rick Stamps testified. The court then filed a decision on June 7, 2016, denying the motion for relief from judgment. The Stamps appeal from that decision.

## II. Excusable Neglect

{¶ 18} The Stamps' First Assignment of Error states that:

The Trial Court Erred in Overruling Defendants-Appellants' Rule 60(B) Motion Because Appellants' Failure to be Present at the Hearing Was an Instance of Excusable Neglect.

{¶ 19} Under this assignment of error, the Stamps contend that they are entitled to relief based on excusable neglect. In this regard, the Stamps argue that they had a meritorious defense against the breach of contract claim and were diligently litigating the case until the final hearing when they failed to appear. They additionally argue that they were not told their attorneys would not appear for trial, were not provided a copy of the court's judgment, and learned of the judgment more than a month later. The Stamps, therefore, contend that their failure to appear did not constitute a total disregard for the

judicial system.

{¶ 20} Civ.R. 60(B) provides that:

On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(B); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (5) any other reason justifying relief from the judgment.

{¶ 21} A motion brought under Civ.R. 60(B)(1) for excusable neglect must be brought within a reasonable time, and "not more than one year after the judgment, order, or proceeding was entered or taken." Civ.R. 60(B). "To prevail on a motion brought under Civ.R. 60(B), the movant must demonstrate that: (1) the party has a meritorious defense or claim to present if relief is granted; (2) the party is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5); and (3) the motion is made within a reasonable time, and, where the grounds of relief are Civ.R. 60(B)(1), (2) or (3), not more than one year after the judgment, order or proceeding was entered or taken." *GTE Automatic Elec., Inc. v. ARC Industries, Inc.*, 47 Ohio St.2d 146, 351 N.E.2d 113 (1976), paragraph two of the syllabus. However, "[t]hese requirements are independent and in

the conjunctive; thus the test is not fulfilled if any one of the requirements is not met."
*Strack v. Pelton*, 70 Ohio St.3d 172, 174, 637 N.E.2d 914 (1994), citing *GTE* at 151.

{¶ 22} We review decisions on Civ.R. 60(B) motions for abuse of discretion. *Id.*, citing *Rose Chevrolet, Inc. v. Adams*, 36 Ohio St.3d 17, 20, 520 N.E.2d 564 (1988). " 'Abuse of discretion' has been defined as an attitude that is unreasonable, arbitrary or unconscionable." *AAAA Enterprises, Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990), citing *Huffman v. Hair Surgeon, Inc.*, 19 Ohio St.3d 83, 87, 482 N.E.2d 1248 (1985). Most abuses of discretion "will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary." *Id.* The court stressed in *AAAA Enterprises* that "[a] decision is unreasonable if there is no sound reasoning process that would support that decision." *Id.*

{¶ 23} In the case before us, the trial court concluded that the combined actions of the Stamps and their attorneys exhibited disregard for the judicial system and Kossoudji's rights. The court, therefore, concluded that the neglect was not excusable. In this regard, the court stressed that both the Stamps and their attorneys had notice of the time and place of trial, but no one appeared. In addition, no motion to continue the trial was filed.

{¶ 24} We agree with the trial court in connection with this particular ground for relief. In *GTE*, the Supreme Court of Ohio specifically adopted the general rule that "the neglect of a party's attorney will be imputed to the party for the purposes of Civ.R. 60(B) (1)." (Citation omitted.) *GTE*, 47 Ohio St.2d 146, 351 N.E.2d 113, at paragraph four of the syllabus. As an explanation for this general rule, the court noted in *GTE* that:

There is certainly no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client. Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer[-]agent and is considered to have " 'notice of all facts, notice of which can be charged upon the attorney.' "

*Id.* at 152, quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962), which in turn quotes *Smith v. Ayer*, 101 U.S. 320, 326, 25 L.Ed. 955 (1879).

{¶ 25} Consistent with *GTE*, we have noted that "an attorney's neglect, including failure to attend a hearing, constituted inexcusable neglect and did not justify granting the client relief from judgment under Civ.R. 60(B)(1), which applies to mistake, inadvertence, surprise, and excusable neglect." *Smith v. Gilbert*, 2d Dist. Clark No. 2014-CA-81, 2015-Ohio-444, ¶ 14, citing *Whitt v. Bennett*, 82 Ohio App.3d 792, 796-797, 613 N.E.2d 667 (2d Dist.1992).

{¶ 26} In the case before us, the Stamps were represented by counsel during the proceedings, and counsel had notice of the trial date several months before trial. During the evidentiary hearing, Rick Stamps testified that he was aware of the trial date, but was instructed not to appear. However, the Stamps' counsel did not file a request to continue the trial date. Notably, co-counsel had entered an appearance on behalf of the Stamps

in late January 2015. Thus, the Stamps had two attorneys available to attend trial or file continuances on their behalf. Both attorneys were given notice on February 11, 2015, when the magistrate overruled the partial motion for summary judgment, that the February 25, 2015 trial date would proceed. In view of these facts, the trial court's decision to deny the motion for relief under Civ.R. 60(B)(1) was based on sound reasoning.

**{¶ 27}** In *Smith*, we commented that "an attorney's abandonment of a client may constitute an extraordinary circumstance justifying relief under Civ.R. 60(B)(5)." *Smith* at ¶ 15, citing *Melton v. Melton*, 1st Dist. Hamilton No. C-130123, 2013-Ohio-4790, ¶ 13. In this regard, we observed that " '[a]bandonment would occur if the attorney were prohibited from practicing law by a disciplinary committee * * * in which case the client would be without scienter.' " *Id.* at ¶ 16, quoting *Mayor v. WCI Steel, Inc.*, 11th Dist. Trumbull No. 2000-T-0054, 2001 WL 276976 (Mar. 16, 2001). In fact, we granted relief in *Smith* on that basis, as the appellant's attorney had been "suspended from the practice of law shortly before trial." *Id.*

**{¶ 28}** This is not the only situation in which relief can be granted for an attorney's actions under Civ.R. 60(B)(5), as "fault should not automatically be imputed when an attorney has grossly neglected a diligent client's case and misleads the client to believe that his interests are being properly handled." *Whitt*, 82 Ohio App.3d at 797-798, 613 N.E.2d 667. *Accord Robinson v. Miller Hamilton Venture, L.L.C.*, 12th Dist. Butler No. CA2010-09-226, 2011-Ohio-3017, ¶ 19. After *Whitt* was decided, we declined to permit relief in situations where no evidence existed to indicate that the clients acted diligently or that the attorney had misled the clients. *Gary R. Gorby & Assoc., L.L.C. v. McCarty*, 2d Dist. Clark No. 2010-CA-71, 2011-Ohio-1983, ¶ 50; *Bank of Am. v. McGlothin*, 2d Dist.

Clark No. 2012-CA-96, 2013-Ohio-2755, ¶ 29 (affirming denial of Civ.R. 60(B)(5) motion based on plaintiff's failure to show diligence in pursing discovery).

{¶ 29} Unfortunately, the Stamps sought relief in the trial court only under Civ.R. 60(B)(1) and (4), not Civ.R. 60(B)(5). Accordingly, the application of Civ.R. 60(B)(5) has been waived and we will not consider it on appeal. *See Nix v. Williams Family Partnership, Ltd.*, 12th Dist. Butler No. CA2013-05-076, 2013-Ohio-5208, ¶ 25, and *Stables v. Bland*, 11th Dist. Trumbull No. 2002-T-0075, 2003-Ohio-1751, ¶ 15 (both refusing to consider arguments under Civ.R. 60(B)(5) where this part of the statute was not raised in the trial court.) Notably, the Stamps also have not raised Civ.R. 60(B)(5) during this appeal, meaning that we cannot consider it even under a plain error analysis.[1]

{¶ 30} We do think the circumstances of this case present a difficult situation, and if the Stamps had properly presented an argument under Civ.R. 60(B)(5) based on abandonment, relief might appropriately have been granted.

{¶ 31} Accordingly, the First Assignment of Error is overruled.


### III. Satisfaction of Judgment

{¶ 32} The Stamps' Second Assignment of Error states that:

The Trial Court Erred in Denying Defendants-Appellants' Motion to

Set Aside Judgment Because the Judgment Has Already Been Satisfied.

{¶ 33} Under this assignment of error, the Stamps contend that the trial court erred in failing to set the judgment aside under Civ.R. 60(B)(4) because the judgment has been

---

[1] The Stamps' attorney did mention during closing argument at the motion hearing that the Stamps had been "abandoned." June 3, 2016 Transcript of Proceedings, p. 32. However, he never argued Civ.R. 60(B)(5) in the trial court and has not raised it on appeal.

satisfied. In this regard, the Stamps contend that the property in question has been deeded back to Kossoudji, and that the additional award of money damages is inequitable.

{¶ 34} Civ.R. 60(B)(4) permits a party to obtain relief from judgment "if the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application * * *."

{¶ 35} In connection with this assignment of error, the Stamps rely on the part of Civ.R. 60(B)(4) pertaining to satisfaction of judgments. They contend the judgment against them has been satisfied because the property has been transferred back to Kossoudji. The Stamps, therefore, maintain that they have been deprived of the benefit of the contract because they no longer possess the property, and further money damages are inequitable. The trial court did not address this argument in its decision, even though it was raised below.

{¶ 36} We have indicated that the basis for relief Civ.R. 60(B)(4) "is premised upon the occurrence of facts *after* the rendering of judgment that would justify relief from the judgment." (Emphasis sic.) *Lussier v. Ned Peppers, Inc.*, 2d Dist. Montgomery No. 26180, 2014-Ohio-5169, ¶ 19, citing *Old Phoenix Nat. Bank v. Sandler*, 14 Ohio App.3d 12, 13, 469 N.E.2d 943 (9th Dist.1984).

{¶ 37} The case on which *Sandler* relied for this proposition is *Wurzelbacher v. Kroeger*, 40 Ohio St.2d 90, 320 N.E.2d 666 (1974). *Sandler* at 13. *Wurzelbacher* involved only the part of Civ.R. 60(B)(4) pertaining to the inequity of prospective application of a judgment, and the Supreme Court of Ohio made no comments about the

rest of Civ.R. 60(B)(4). *Id.* at 92. Nonetheless, by necessary implication, satisfaction of a judgment would normally involve events occurring after the judgment. *See e.g., Bob Krihwan Pontiac-GMC Truck, Inc. v. Gen. Motors Corp.*, 145 Ohio App.3d 671, 675, 763 N.E.2d 1253 (10th Dist.2001) (observing that in ordinary civil actions where judgment is entered in favor of one party for an amount of money, "the judgment is satisfied, in essence, by the losing party's paying the money.")

{¶ 38} In the case before us, the trial court ordered the Stamps to quit-claim their interest in the property, and also awarded Kossoudji $133,929.44, plus statutory interest from February 25, 2015, as damages. In this regard, Kossoudji responds that she brought a complaint for money damages, asking for acceleration of all amounts under the land contract (alleged at that time to be $118,145.43 – a sum that included $13,884 in monthly payments unpaid to that date, taxes that were owed for 2011-2013, and a balloon payment of $101,521). Kossoudji also points out that she asked for an amount in excess of $25,000 for demolition of a structure on the property and environmental harm suffered by the property – therefore, implying that the judgment was intended to cover both types of damages and has not been satisfied.

{¶ 39} The judgment entry the magistrate initially filed does not specify which part of the judgment might be attributable to past-due amounts for payments and taxes, and which part might have been attributable to damages caused by demolition of the structure and alleged environmental harm. However, at trial, Kossoudji presented an exhibit indicating that her damages were as follows: $22,332.92 for unpaid payments and late fees from July 2013 through December 2014; $10,095.31 for unpaid real estate taxes; and $101,501.21 for the balloon payment due on January 1, 2015. The total amount

claimed, thus, was $133,929.44, which was allocated solely to amounts due under the contract. This is exactly the amount the magistrate awarded. *See* Plaintiff's Trial Ex. 4, and Magistrate's Decision, Doc. #44, pp. 2-3, and Amended Magistrate's Decision, Doc. #48, pp. 2-3. As a result, even if Kossoudji wished to claim an amount for alleged damages to the property, she did not present any evidence to that effect. Furthermore, after the $133,929.44 amount was awarded, the magistrate and trial court also ordered that the property be deeded back to Kossoudji.

{¶ 40} In responding to the Stamps' assignment of error, Kossoudji further argues that while the appropriate measure for relief of breach of a land contract is return of the property, termination of the contract is not an exclusive remedy under R.C. 5313.10. Specifically, R.C. 5313.10 states that termination is an exclusive remedy "unless the vendee has paid an amount less than the fair rental value plus deterioration or destruction of the property occasioned by the vendee's use." In that case, "the vendor may recover the difference between the amount paid by the vendee on the contract and the fair rental value of the property plus an amount for the deterioration or destruction of the property occasioned by the vendee's use." *Id.*

{¶ 41} According to Kossoudji, the Stamps' argument about satisfaction of the judgment ignores the fact that Kossoudji's complaint requested damages for environmental damages and destruction of the property. Again, Kossoudji's argument is that she was entitled to more damages than simply terminating the contract and obtaining the property. As we observed, however, the damages that Kossoudji lists in Plaintiff's Trial Ex. 4 say nothing about the fair rental value of the property or about deterioration or destruction.

{¶ 42} R.C. Chapter 5313 has been described as " 'essentially a "consumer protection law " ' " * * *. *Howard v. Temple*, 172 Ohio App.3d 21, 2007-Ohio-3074, 872 N.E.2d 1260, ¶ 9 (4th Dist.), quoting *Albright v. Cochran,* 5th Dist. Morrow No. CA-613, 1984 WL 4479, *2 (Mar. 2, 1984). It is "intended to prevent a 'windfall to a vendor who has previously collected substantial sums under a land contract and/or has actually recovered the property.' " *Id.*, quoting *Farkas v. Bernard*, 10th Dist. Franklin No. 95APE10-1365, 1996 WL 257455, *4 (May 16, 1996). As a result, "upon an election of forfeiture, the statutes limit a vendor's remedies." *Id.*, citing *Koehler v. Paniagua*, 3d Dist. Hancock No. 5-02-64, 2003-Ohio-1972, ¶ 9.

{¶ 43} However, R.C. Chapter 5313 has been limited to land contracts for residential dwellings only. (Citations omitted.) *P.M.D. Land Co. v. Warner Realty, Inc.*, 11th Dist. Trumbull No. 2009-T-0021, 2009-Ohio-6704, ¶ 37. *See also Johnson v. Maxwell*, 51 Ohio App.3d 137, 139, 554 N.E.2d 1370 (9th Dist.1988) (noting that "R.C. Chapter 5313 has no application to purely commercial properties"). (Citation omitted.)

{¶ 44} From the evidence presented at the hearing, the land contract between the Stamps and Kossoudji appears to have involved commercial property, not a residential dwelling. Rick Stamps indicated that he used the property for recycling asphalt shingles. One building on the property was leaning and uninhabitable, and was never used. This was the building that was demolished. The property also contained a Quonset metal building used for storing tools and as part of the Stamps' business.

{¶ 45} Where R.C. Chapter 5313 does not apply, a vendor has several available remedies:

Where there has been a breach of the contract by the vendee's

failure to make the payments specified in the contract, the vendor may bring an action against the vendee for the payments due, recover judgment therefor, levy upon the land and sell the same to satisfy such judgment, thereby extinguishing the equity of the vendee in such land. The vendor may also treat the transaction as giving to him a lien upon the premises in the nature of an equitable mortgage, and he may bring an action to foreclose the same and obtain an order requiring the vendee to pay the balance due by a certain time, and, in default thereof, have the premises sold to satisfy the claim of vendor for the balance due on the contract. Where the vendee is in possession and a substantial part of the purchase price has been paid, this is the equitable and fair procedure to adopt.

Where the contract * * * provides for a forfeiture, which the vendor may declare, he may declare such forfeiture and bring an action at law in ejectment to recover the possession of the premises, but in such case the vendee may by answer set up facts, if they exists [sic], which will justify a court of equity in relieving him against the consequences of the forfeiture.

*Johnson* at 140, quoting *Woloveck v. Schueler*, 19 Ohio App. 210, 218-219 (9th Dist.1922).

{¶ 46} In *Johnson*, the contract allowed the vendor to declare a forfeiture or to accelerate the debt and foreclose on the property. *Id.* at 141. This is similar to the provision in the land installment contract between the Stamps and Kossoudji. Specifically, their contract stated that upon various defaults of the purchaser, including failure to pay installments or taxes, or to insure the property:

Seller shall have the option to declare all of the remaining installments and amounts provided for herein immediately due and payable. In such event, the Seller may utilize any legal or equitable remedy to proceed against the Purchaser, including, without limitation, foreclosure of the Purchaser's interest, forfeiture or any other remedy set forth in Chapter 5313 of the Ohio Revised Code.

Plaintiff's Trial Ex. 2 (Land Contract), p. 5.

{¶ 47} Although the contract refers to R.C. Chapter 5313, it does not appear, as we noted, that this chapter applies. The remedy in *Johnson* was that the seller was given judgment for the amount due under the land contract and the property was ordered sold by sheriff's sale. A deficiency judgment was then granted to the sellers, because the amount of the sale proceeds did not satisfy the amount of the judgment. *Johnson*, 51 Ohio App.3d at 138-139, 554 N.E.2d 1370. The court of appeals affirmed this as appropriate. *Id.* at 141.

{¶ 48} In *Smith v. Jewett*, 5th Dist. Richland No. 04 CA 96, 2005-Ohio-3982, the vendor of commercial real estate that was purchased through a land installment contract brought an action for real estate forfeiture and damages. In that situation, the trial court held that the land should be forfeited and that the vendor should retain the payments that had previously been made as stipulated damages. *Id.* at ¶ 3-4. Quoting *Johnson*, the court observed that " '[f]orfeiture clauses contained in land installment contracts are enforceable in Ohio, so long as the resulting benefit to the vendor is not "extravagantly unreasonable or manifestly disproportionate to the actual damages sustained" by the vendor.' " *Id.* at ¶ 19, quoting *Johnson* at 140, which in turn quotes

*Norpac Realty Co. v. Schackne*, 107 Ohio St. 425, 140 N.E. 480 (1923), paragraph one of the syllabus.

{¶ 49} In *Johnson*, the court stressed that "other remedies are favored and forfeiture clauses are rarely strictly enforced by modern Ohio courts." *Johnson* at 140. Even in *Smith*, the court only ordered forfeiture of the land and retention of the payments made, not the total contract price plus forfeiture.

{¶ 50} In the case before us, the trial court awarded $133,929.44 in damages, and also ordered the property re-conveyed to Kossoudji, who sold the property to a third party on May 18, 2015, three days after the trial court's judgment was entered. *See* Affidavit of Shirley Kossoudji, attached as Ex. A to Plaintiff's Memorandum Contra to Defendant's Motion to Set Aside Judgment under Civ.R. 60(B), Doc. #61.

{¶ 51} The sale was an event that occurred post-judgment, and would have fallen within the purview of Civ.R. 60(B)(4). It would also be inequitable to give the judgment prospective application. Specifically, the trial court did not order Kossoudji to credit the amount of the sale against the judgment obtained against the Stamps, and on its face, this violated the rules applying to land installment contracts. In this regard, we also note that the complaint requested money damages only, and did not even request that the court order the property forfeited.

{¶ 52} Furthermore, even if we agreed with Kossoudji that R.C. Chapter 5313 applies, R.C. 5313.07 indicates that where a contract has been in existence for five years or more from the date of the first payment, or the vendee has paid more than 20% towards the purchase price, the vendor must use a proceeding for foreclosure and judicial sale under R.C. 2323.07, and the vendor is entitled to the proceeds of the sale, up to the

unpaid balance on the contract.

{¶ 53} The contract in the case before us was in effect for more than three years prior to default, and by that time, the Stamps had paid $48,595.38. (This included 42 monthly payments of $849, plus taxes, and a $5,000 down payment.) *See* Plaintiff's Trial Ex. 4, pp. 1-2. Assuming for the sake of argument that the total amount due under the contract, including the down payment, monthly payments, property taxes, and the balloon payment was $182,524.82 (the total of all payments and amounts due shown on Trial Ex. 4), the Stamps had paid approximately 26.62% of the total amount. *Id.* Contrary to R.C. 5313.07, however, Kossoudji did not bring an action for foreclosure and judicial sale; she only brought a claim for money damages.

{¶ 54} Even if we assume that the 20% amount had not been satisfied, in situations where a contract has existed for less than five years, the vendor "may bring an action for forfeiture of the vendee's rights in the land installment contract and for restitution of his property under Chapter 1923. [forcible entry and detainer] of the Revised Code." R.C. 5313.08. Use of the remedies in R.C. 5313.07 and 5313.08, however, precludes vendors from obtaining deficiency judgments. *See, e.g., Flora v. Pullins*, 2d Dist. Champaign No. 96-CA-13, 1996 WL 648353, *2 (Nov. 8, 1996). *Accord Good Shepherd Baptist Church, Inc. v. City of Columbus*, 20 Ohio App.3d 228, 229, 485 N.E.2d 725 (10th Dist.1984); *Howard*, 172 Ohio App.3d 21, 2007-Ohio-3074, 872 N.E.2d 1260, at ¶ 12 (all citing R.C. 5313.10).

{¶ 55} We noted in *Flora* that R.C. 5313.10 expands this " 'exclusive remedy' " in certain cases. *Id.* In this regard, we stressed that "R.C. 5313.10 provides that the seller's election of remedies bars further action on the land contract 'unless the vendee

has paid an amount less than the fair rental value plus deterioration or destruction of the property occasioned by the vendee's use.' Under those circumstances, 'the vendor may recover the difference between the amount paid by the vendee on the contract and the fair rental value of the property plus an amount for the deterioration or destruction of the property occasioned by the vendee's use.' " *Id.* at *3, quoting R.C. 5313.10.

{¶ 56} In this situation, "R.C. 5313.10 limits recovery to an 'award for property damage and for the balance of the fair rental value for the holdover period * * *.' " *Voska v. Coffman*, 6th Dist. Sandusky No. S-13-008, 2013-Ohio-5474, ¶ 11, quoting *Goodrich v. Sickelbaugh*, 6th Dist. Lucas No. L-85-194, 1986 WL 3447, *2 (Mar. 21, 1986).

{¶ 57} Needless to say, R.C. 5313.10 would not permit a court to grant the full purchase price of the contract plus forfeiture of the property. Instead, recovery would be limited to forfeiture or foreclosure, plus property damage and the balance of fair rental value for a holdover period. Again, according to Plaintiff's Trial Ex. 4, the evidence presented by Kossoudji had nothing to do with forfeiture, the property damage, or the balance of fair rental value for a holdover period. The damages claimed and awarded were for the full value of all remaining payments due under the contract. In addition, the property was ordered forfeited to Kossoudji.

{¶ 58} *In Entingh v. Howard*, 2d Dist. Montgomery No. 13407, 1992 WL 379305, (Dec. 22, 1992), we concluded that the vendor would be limited to the return of the property and the remedies as limited by R.C. 5313.10, even though the vendor's complaint did not rely on R.C. 5313.07 or R.C. 5313.08.

{¶ 59} We first agreed with the vendors-appellants that their complaint had not been specifically filed under R.C. 5313.07 or R.C. 5313.08, because the vendors had only

asked for removal of the cloud on their title created by the land contract, "pursuant to Ohio Revised Code 5313.09." *Id.* at *1. We concluded, however, that the record nonetheless supported the trial court's conclusion that the vendor's remedies were limited by R.C. 5313.10. *Id.* at *2. R.C. 5313.09 allows judgments for a vendor to operate as a cancellation of a land installment

{¶ 60} In this regard, we noted that R.C. 5313.09 states that " '[a] judgment for the vendor shall operate to cancel the land installment contract' * * * [and] that * * * 'the county recorder of such county shall record such authenticated judgment as an instrument of cancellation.' " *Id.* at *2. We stressed that "[i]n our view 'a judgment for the vendor' refers to and is limited to a judgment obtained under either R.C. 5313.07 (foreclosure) or R.C. 5313.08 (forfeiture and restitution)." *Id.* We thus held that "it follows that the cancellation of the contract pursuant to R.C. 5313.09 was the result of the plaintiffs pursuing the exclusive remedy provided for in R.C. 5313.08." *Id.*

{¶ 61} This was so even though the vendor had sought money damages for breach of the land contract and had specifically not asked the court for forfeiture or foreclosure under R.C. 5313.07 or R.C. 5313.08. In other words, the vendor obtained the remedy attributable to these sections, even though the vendor chose not to rely on them. As a result, we concluded that the trial court did not err in limiting the vendors to the damages listed in R.C. 5313.10, which amounted to $205, rather than the damages in excess of $40,000 that the vendors had requested. *Entingh*, 2d Dist. Montgomery No. 13407, 1992 WL 379305, at *1-2.

{¶ 62} In the case before us, Kossoudji filed a complaint for money damages, and initially was granted damages by the magistrate of $133,929.44. However, the

magistrate then amended the decision and also ordered the Stamps to file a quit-claim deed of their interest within seven days. If the Stamps failed to do so, the court decree was to operate as a transfer of the property interest with agencies like the auditor and treasurer. Thus, like the vendor in *Entingh*, Kossoudji obtained the relief set forth in R.C. 5313.09 (and therefore, the relief set forth in R.C. 5313.08), even though her complaint did not specifically request this remedy.

{¶ 63} We noted in *Zumbrink v. Hercules*, 2d Dist. Darke No. 1392, 1996 WL 339947 (June 21, 1996), that a vendee of a land contract stands as an equitable owner of the property until he or she " 'has performed all his [or her] obligations under the contract and has attained legal title to the property * * *.' " *Id.* at *7, quoting *Blue Ash Bldg. & Loan Co. v. Hahn*, 20 Ohio App.3d 21, 24, 484 N.E.2d 186 (1st Dist.1984). In addition, we stressed that the vendee's interest equals the amount of the purchase that has been paid, and the vendee has " 'an equitable lien or estate in the land in the amount paid on the purchase price.' " *Id.*, quoting *Wayne Bldg. & Loan Co. of Wooster v. Yarborough*, 11 Ohio St.2d 195, 199, 228 N.E.2d 841 (1967). (Other citation omitted.)

{¶ 64} The point of this discussion is that if the property were commercial rather than residential, Kossoudji would have had the remedy of bringing an action against the Stamps for the payments due, and after recovering judgment, she could have levied against the land and sold it to satisfy the judgment. In that event, Kossoudji could have obtained a deficiency judgment against the Stamps if the sales price did not equal the price of the land contract. Alternatively, Kossoudji could have brought a foreclosure action and could have obtained an order requiring the Stamps to pay the balance due on the contract by a certain date. Upon a default in that regard, the premises could have

been sold to satisfy Kossoudji's claim. Again, the Stamps would have been given credit for the amount of the sale. Kossoudji may also have chosen forfeiture only, and could have retained the amounts the Stamps previously paid on the contract, so long as these amounts were not inequitable.

{¶ 65} If the property were residential, R.C. Chapter 5313 would apply, and Kossoudji could have elected to file for foreclosure under R.C. 5313.07, or for forfeiture under R.C. 5313.08. If more than 20% had been paid under the contract, Kossoudji would have been restricted to having the property foreclosed. If less than 20% had been paid, Kossoudji would be entitled to have the property forfeited. In either situation, Kossoudji could have expanded her remedy beyond foreclosure or forfeiture, if she could establish damages and a loss of fair market value rental during holdover. However, she would not have been allowed a deficiency judgment.

{¶ 66} In none of the above instances would Kossoudji have been allowed to recover the full amount of the contract price, as well as unpaid taxes, plus being given the property back to sell to a third party without accounting for the sales price – in essence, to recoup a double recovery against the vendee. As a result, we conclude that the trial court erred in overruling the Stamps' motion for relief from judgment. Under applicable Civ.R. 60(B) requirements, the Stamps presented their motion within a reasonable time, demonstrated that they had a meritorious claim to present, and established that they were entitled to relief under Civ.R. 60(B)(4). *GTE*, 47 Ohio St.2d 146, 351 N.E.2d 113, at paragraph two of the syllabus.

{¶ 67} As was noted, the trial court did not discuss this argument when it overruled the motion for relief from judgment. As a general rule, "if the trial court fails to mention

or rule on a motion or an objection, we presume that the objection or motion was overruled." *Jeffrey B. Peterson & Assoc. v. Dayton Metropolitan Hous. Auth.*, 2d Dist. Montgomery No. 17306, 2000 WL 1006562, \*5 (July 21, 2000), citing *Dayton Monetary Assoc. v. Becker*, 126 Ohio App.3d 527, 539, 710 N.E.2d 1151 (2d Dist.1998). (Citation omitted.) Thus, we assume the trial court rejected the Stamps' argument regarding Civ.R. 60(B)(4). Given the state of the record, we conclude that a rejection of the Stamps' position was contrary to law, and the court, therefore, abused its discretion. Accordingly, the Second Assignment of Error is sustained.

## IV. Conclusion

{¶ 68} The Stamps' First Assignment of Error having been overruled, and the Second Assignment of Error having been sustained, the judgment of the trial court is reversed, and this cause is remanded for further proceedings. On remand, the trial court is to determine the actual monetary loss sustained by Plaintiff, taking into account the amounts attributable to loss of use of the property and the subsequent sales price of the subject property, plus any other relevant considerations supported by the evidence presented at trial.

. . . . . . . . . . . .

DONOVAN, P.J. and FROELICH, J., concur.

Copies mailed to:

Matthew C. Sorg
F. Harrison Green
Hon. Timothy N. O'Connell