[Cite as *Retirement Mgt. Co. v. Nsong*, 2017-Ohio-5869.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The Retirement Management Company, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 15AP-876 |
| v. | : | (M.C. No. 2015 CVG 7643) |
| Stella Nsong, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on July 18, 2017

**On brief:** *Law Office of Sean A. McCarter*, and *Sean A. McCarter*, for appellee. **Argued:** *Sean A. McCarter.*

**On brief:** *Shryock Crook and Associates, LLC*, and *Jay F. Crook*, for appellant. **Argued:** *Jay F. Crook.*

APPEAL from the Franklin County Municipal Court

BRUNNER, J.

{¶ 1} Defendant-appellant, Stella Nsong, appeals from a judgment of the Franklin County Municipal Court issued on August 20, 2015, denying her Civ.R. 60(B) motion to vacate a judgment previously entered in favor of plaintiff-appellee, The Retirement Management Company ("RMC"). Because we find that the trial court did not abuse its discretion, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} On August 10, 2009, Nsong entered into a written agreement with RMC to purchase RMC's property and business assets located at 2469 Kimberly Parkway, Columbus, Ohio ("the property"), which included the Woodlands at Eastland Retirement Community, for $2,100,000. The agreement consisted of a document captioned "Installment Land Contract" (sometimes referred to in the record as "ILC") and other documents, including a cognovit promissory note, collectively referred to as the "Ancillary

Documents." (Installment Land Contract at 1, attached to Mar. 9, 2015 Compl.) The agreement took effect on September 1, 2009.

{¶ 3} Under the terms of the agreement, Nsong agreed to pay RMC a monthly payment of $17,565.24, "which represents the Purchase Price amortized at an interest rate of eight percent (8%) (the "Initial Interest Rate") over a period of twenty (20) years." (Compl. at ¶ 4; Installment Land Contract at 2.) Language in the installment land contract noted that an amortization schedule was attached. Nsong's payments were due on the first of each month commencing December 1, 2009. The installment land contract enumerated activities Nsong was required to do or refrain from doing with respect to the property and specified that Nsong "shall only use the Property as a senior housing facility or substantially similar use." (Installment Land Contract at 5.) The installment land contract also required Nsong to make monthly payments pursuant to a cognovit promissory note and to pay the property taxes as they came due. (Compl. at ¶ 6, 8-9; Installment Land Contract at 4, 8.) The contract set forth the conditions under which Nsong would be deemed in default of the agreement, which included but was not limited to being more than 15 days late in paying any monetary obligation required to be paid under the installment land contract, failing to pay the property taxes, or failing to pay on the cognovit promissory note. (Installment Land Contract at 8.) The installment land contract gave RMC the right to re-enter on the property and the buildings at any time after Nsong's default, without serving further notice on her. *Id.* The contract also included a provision for the service of all notices under the agreement by mail with notice to Nsong at an address in Mentor, Ohio, and a copy thereof to her legal counsel at an address in Wickliffe, Ohio. (*Id.* at 9-10.)

{¶ 4} On March 9, 2015, RMC filed a complaint in forcible entry and detainer alleging Nsong had defaulted on the agreement. RMC sought immediate possession of the property. RMC alleged Nsong's last installment payment was for the month of February 2015. (Compl. at ¶ 5.) RMC further alleged that Nsong had failed to pay real estate tax on the property since January 2014, and that the total amount due for taxes, penalties, and interest at the time the of the complaint was $208,010. (Compl. at ¶ 6-7.) RMC also alleged Nsong had failed to make payment on the cognovit promissory note for March 2015. (Compl. at ¶ 8-9.) A copy of the installment land contract was attached to the complaint. RMC asserted that the statutorily required notice of intention to commence action was

served on February 4 and 5, 2015, and that Nsong had unlawfully and forcibly detained RMC's possession of the property since February 20, 2015. (Compl. at ¶ 10-11.)

{¶ 5} An eviction hearing was scheduled for March 30, 2015, before a magistrate of the trial court, and notice thereof was served by certified mail and by bailiff service. Nsong did not appear at the eviction hearing, after which the magistrate entered judgment for RMC for restitution of the premises and court costs.

{¶ 6} On April 10, 2015, Nsong filed a Civ.R. 60(B) motion to vacate judgment. She asserted she did not attend the eviction hearing because she never received service of the summons and complaint. She argued she was entitled to relief from judgment because lack of service fell under the categories of "excusable neglect" and any other reason justifying relief. (Apr. 10, 2015 Mot. to Vacate Jgmt. at 6.) Nsong also asserted she was entitled to relief because she had not received the statutory three-day notice before RMC filed its complaint. Finally, she asserted that a foreclosure proceeding pursuant to R.C. 5313.07 was required for this action, rather than a forcible entry and detainer proceeding, and thus the trial court lacked jurisdiction to rule on this matter.

{¶ 7} RMC timely answered Nsong's motion, arguing that the trial court's records and the evidence adduced at the eviction hearing established proper service of the three-day notice and the summons and complaint. RMC also argued that the trial court had jurisdiction to rule on this matter because the property was commercial rather than residential, and thus R.C. 5313.07 was inapplicable.

{¶ 8} The trial court conducted an evidentiary hearing on Nsong's motion on July 8, 2015, and it issued a decision and entry denying Nsong's motion[1] on August 20, 2015.

{¶ 9} The trial court first addressed Nsong's claim that the notice requirements had not been satisfied:

> Having considered the evidence submitted, the Court finds that [RMC] complied with the notice requirements set forth in R.C. 1923.04, based on [RMC's] counsel's affidavit stating he hand-delivered the notice to the front desk at the subject property, as allowed by statute.

---

[1] Footnote 1 of the trial court's August 20, 2015 Decision and Entry noted that the trial court's decision referred to both Nsong's initial motion and her subsequently filed "supplemental" motion to vacate as a single motion to vacate.

No. 15AP-876

(Aug. 20, 2015 Decision & Entry at 2.)

{¶ 10} The trial court next addressed Nsong's assertion of insufficient service of process:

> Although [Nsong] raised the issue of insufficient service of the summons and complaint pursuant to Civ.R. 60(B), a motion to vacate judgment for lack of service goes to whether the trial court had jurisdiction to render judgment and is not governed by Civ.R. 60(B). Therefore, to the extent [Nsong] argues the alleged lack of service constitutes "excusable neglect" or "any other reason justifying relief," the argument is not well taken.

Id.

{¶ 11} The trial court further concluded that Nsong had failed to demonstrate at the evidentiary hearing how RMC failed to satisfy the service requirements for a forcible entry and detainer action. The trial court found its records established that RMC had facially complied with the service requirements, whereas Nsong had testified only that she did not see the service that had been made by the bailiff. The trial court, "[h]aving weighed the evidence and considered the credibility of [Nsong's] testimony," found that Nsong "did not meet her burden to show she did not receive service." *Id.* at 3.

{¶ 12} Finally, the trial court was unpersuaded by Nsong's argument that a forcible entry and detainer action was an improper proceeding. The trial court found that "[a] forcible entry and detainer proceeding, instead of a foreclosure proceeding, was appropriate in this case because in terms of the contract between the parties, the subject property, including the assisted care facility on the premises, served a purely commercial purpose for [Nsong]." *Id.* The trial court discussed our ruling in *Taylor v. Nickston Invests.*, 10th Dist. No. 92AP-508 (Nov. 17, 1992), that a land contract is governed by the foreclosure proceedings set forth in R.C. 5313.07 if a dwelling has been erected on the premises. The trial court acknowledged that, "[i]f the agreement between the parties was a land contract that had been in effect for over 5 years, a foreclosure proceeding would be the only proper proceeding for this action and the Franklin County Municipal Court would not have jurisdiction." (Aug. 20, 2015 Decision & Entry at 3-4.) However, the trial court distinguished the facts of this action from those required for a foreclosure action as follows:

> In the present case, the Court notes that the parties' agreement is labelled "land installment contract." However, "contractual

> labels are not controlling and * * * courts must look to the substance of the relationship" to determine the nature of the contract. *Slauter v. Klink*, 2nd Dist. Montgomery No. 18150, 2000 WL 1162041, *7 (Aug. 18, 2000). Here, the language of the written agreement is clear that the property is a commercial entity and not a residential entity. Even in [Nsong]'s motion to vacate, she describes the agreement as regarding the purchase of "property and business assets." At no point in the written agreement does it mention [Nsong] using the property for residential purposes, and instead, describes the property as a business entity as a source of income for [Nsong]. The fact that [Nsong] decided to live at the property does not overshadow the fact that the property was most essentially commercial. Last, though not dispositive, the Court notes that *the written agreement itself describes a forcible entry and detainer proceeding as the proper course of action to address a default by the purchaser.*

(Emphasis added.) (Aug. 20, 2015 Decision & Entry at 4.)

{¶ 13} Nsong filed her notice of appeal on September 21, 2015.

## II. ASSIGNMENTS OF ERROR

{¶ 14} Nsong presents three assignments of error for our review:

> [1.] The trial court committed Abused its Discretion and committed Reversible Error in finding that the provisions of O.R.C. 5313.07 did not apply to the case at bar based on the presence of a "domicile" on the property in question.
>
> [2.] The trial court Abused its' Discretion and committed Reversible Error in finding that Appellee had met the statutory pre-requisites in order to proceed with the prosecution of a forfeiture / eviction proceeding under the Land Installment Contract in Question.
>
> [3.] The trial court Abused its' Discretion and committed Reversible Error in failing to find grounds for relief under Ohio R. Civ. P. 60(B)(5).

(Sic passim.)

## III. DISCUSSION

### A. Standard of Review

{¶ 15} A trial court's "ruling will not be disturbed on appeal absent a showing of abuse of discretion." *Griffey v. Rajan*, 33 Ohio St.3d 75, *77* (1987). " 'The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's

No. 15AP-876

attitude is unreasonable, arbitrary or unconscionable.' " *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983), quoting *State v. Adams*, 62 Ohio St.2d 151, 157 (1980). When applying an abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. *Berk v. Matthews*, 53 Ohio St.3d 161, 169 (1990).

## B. First Assignment of Error

{¶ 16} Nsong's first assignment of error centers around the basic argument that the trial court erred in failing to follow the statutory mandates of R.C. 5313 et. seq., which govern land installment contracts for residential dwellings.

{¶ 17} We disagree with Nsong's contention. The provisions of R.C. Chapter 5313 apply to residential, rather than commercial, real property. A land contract is governed by the foreclosure proceedings set forth in R.C. 5313.07 only if a dwelling has been erected on the premises. *Taylor*. The trial court clearly and concisely recited the language of the written agreement between Nsong and RMC, and of Nsong's motion to vacate judgment, that made it clear that the property was not a residential entity, but a commercial entity on which an on-going business was being conducted. As a matter of law, we concur with the trial court's assessment that the mere fact that Nsong decided to live at the property did not convert a property that was "most essentially commercial" into a residential property. (Aug. 20, 2015 Decision & Entry at 4.)

{¶ 18} We find nothing in the record to support abuse of discretion by the trial court in finding that the character and use of the property was commercial rather than residential, and, therefore, that the provisions of R.C. 5313.07 did not apply in this case. We note, as did the trial court, "the written agreement itself describes a forcible entry and detainer proceeding as the proper course of action to address a default by the purchaser." (Aug. 20, 2015 Decision & Entry at 4.)

{¶ 19} Under these facts, we find no error or law or abuse of discretion with the trial court's finding that RMC's forcible entry and detainer action was appropriate here. Nsong's first assignment of error is overruled.

## C. Second Assignment of Error

{¶ 20} Nsong argues in her second assignment of error that the trial court erred in finding that RMC had fulfilled the statutory prerequisites in order to proceed with an action regarding the agreement.

No. 15AP-876

{¶ 21} The record contains sufficient facts demonstrating that RMC complied with the applicable notice and service of process requirements for a forcible entry and detainer action. The trial court considered the evidence submitted, as well as the trial court's own records, to find that RMC had complied with the notice requirements set forth in R.C. 1923.04 and 5313.06 for a forcible entry and detainer action. The trial court also found that Nsong had not carried her burden to show that RMC had not fulfilled the statutory prerequisites.

{¶ 22} We conclude that the trial court correctly applied the law to its factual findings and did not abuse its discretion in finding that RMC had complied with the applicable requirements for granting forcible entry and detainer. Nsong's second assignment of error is overruled.

### D. Third Assignment of Error

{¶ 23} In her third assignment of error, Nsong asserts that the trial court erred in failing to find grounds for relief under Civ.R. 60(B)(5).

{¶ 24} "A motion for relief from judgment under Civ.R. 60(B) is addressed to the sound discretion of the trial court, and that court's ruling will not be disturbed on appeal absent a showing of abuse of discretion." *Griffey* at 77. " 'The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.' " *Blakemore* at 219, quoting *Adams* at 157. When applying an abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. *Berk* at 169.

{¶ 25} Civ.R. 60(B) provides that a trial court may relieve a party from a final judgment, order or proceeding for the following reasons:

> (1) Mistake, inadvertence, surprise or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(B); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (5) any other reason justifying relief from the judgment.

No. 15AP-876

{¶ 26} To prevail under Civ.R. 60(B), the movant must show that (1) the movant has a meritorious defense or claim to present if relief is granted, (2) the movant is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5), and (3) the motion is made within a reasonable time. The movant must satisfy all three of these requirements to obtain relief. *Bur. of Workers' Comp. v. Daily Servs., LLC*, 10th Dist. No. 11AP-1122, 2012-Ohio-4242, ¶ 13, citing *GTE Automatic Elec., Inc. v. ARC Industries, Inc.,* 47 Ohio St.2d 146 (1976), paragraph two of the syllabus; *State ex rel. Richard v. Seidner*, 76 Ohio St.3d 149, 151 (1996).

{¶ 27} As the trial court noted, "a motion to vacate judgment for lack of service goes to whether the trial court had jurisdiction to render judgment and is not governed by Civ.R. 60(B)." (Aug. 20, 2015 Decision & Entry at 2.) Consequently, Nsong's argument that the alleged lack of service constituted "any other reason justifying relief" pursuant to Civ.R. 60(B)(5) is not well taken. We agree with the trial court. Because Nsong cannot show she is entitled to relief under Civ.R. 60(B)(5), she cannot satisfy all three prongs necessary to prevail under Civ.R. 60(B). We need not address the other two prongs.

{¶ 28} Nsong's third assignment of error is overruled.

## IV. CONCLUSION

{¶ 29} We find that the trial court did not abuse its discretion in denying Nsong's motion to vacate judgment, and we overrule all three of Nsong's assignments of error. The judgment of the Franklin County Municipal Court is affirmed.

*Judgment affirmed.*

TYACK, P.J., and HORTON, J., concur.