[Cite as *American Eagle Invests., Inc. v. Marco's Franchising, L.L.C.*, 2024-Ohio-3038.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

American Eagle Investments, Inc.

Court of Appeals No.  L-23-1182

Appellant

Trial Court No.  CI0202201831

v.

Marco's Franchising, LLC

**DECISION AND JUDGMENT**

Appellee

Decided: August 9, 2024

* * * * *

Peter R. Silverman, Matthew T. Kemp, and
Nicholas A. Huckaby, for appellant.

Anthony J. Calamunci, Amy L. Butler, and
W. Barry Blum, for appellee.

* * * * *

**MAYLE, J.**

{¶ 1} Plaintiff-appellant, American Eagle Investments, Inc., appeals the July 12, 2023 judgment of the Lucas County Court of Common Pleas, granting summary judgment in favor of defendant-appellee, Marco's Franchising, LLC.  For the following reasons, we reverse the trial court judgment.

## I. Background

{¶ 2} American Eagle Investments, Inc. is a Georgia corporation whose principal members are George Corcoran and William Russell. Marco's Franchising, LLC is an Ohio limited liability company and franchisor of pizza restaurants. American Eagle and Marco's were parties to an Area Representative Agreement ("ARA"), pursuant to which American Eagle served as Marco's area representative in developing franchises within a defined territory that included Biloxi-Gulfport, Dothan, Montgomery-Selma, Mobile-Pensacola, and Panama City.

{¶ 3} The parties entered into the ARA in 2009 for a ten-year term with the potential for four five-year renewal terms. The first renewal was executed in April of 2019.

### A. American Eagle files suit after Marco's issues it a notice of default.

{¶ 4} On August 27, 2020, Marco's sent American Eagle a notice of default after learning that Russell and Corcoran, as members of an entity called Ice 'Em, LLC, had entered into another Area Representative Agreement to develop franchises of Jeremiah's Italian Ice. Although Jeremiah's Italian Ice is in the business of selling frozen desserts and is not in the business of selling pizza or other products similar to Marco's, Marco's maintained that American Eagle violated the following provisions of the ARA:

Section 6.2. Area Representative's business shall be under the active full-time management (as more fully set forth in section 6.18) of Area Representative. If Area Representative is a corporation, partnership, limited liability company, or limited liability partnership, such management

must be by one or more of Area Representative's Principal Owners who are designated to supervise the operation of the business contemplated under this agreement and to have been previously approved by Franchisor or (the "Managing Operator"). . . .

Section 6.18. Area Representative (or if Area Representative is a corporation, partnership, limited liability company, the Managing Operator) or one of Area Representative's [Area Representative Operations Field Consultants ("AR-OFCs")] shall devote his or her full-time efforts, of not less than 40 hours per week, to the management and attention of the Area Representative business. . . .

Section 15.1. Area Representative covenants that during the Term of this Agreement, except as otherwise approved in writing by Franchisor, Area Representative (or if Area Representative is a corporation, partnership, or limited liability company, the Managing Operator) or Area Representative's Manager shall devote full time, energy, and best efforts to the management and operation of the Area Representative Business in full compliance with the Area Representative Manual.

Section 16.1.4. Area Representative shall confine its activities to only: (a) conducting the business licensed under this Agreement; and (b) conducting the business licensed under a franchise agreement with Franchisor.

3.

{¶ 5} American Eagle responded to Marco's notice of default letter and denied that it had violated the provisions of the ARA. Having received no response from Marco's in response to its letter, American Eagle filed suit on September 24, 2020, seeking declaratory judgment (Count I) and alleging violations of R.C. 1334.03(B) (making false or misleading statement or engaging in deceptive or unconscionable act or practice) (Count II). The next day, it moved for a temporary restraining order and preliminary injunction, which the trial court heard on October 9, 2020, and denied in an opinion filed October 19, 2020. Following the court's denial of American Eagle's motion for preliminary injunction, Marco's terminated the ARA.

{¶ 6} Marco's moved for summary judgment on September 13, 2021. American Eagle was granted an extension of time to file a response. When it sought a second extension under Civ.R. 56(F), Marco's opposed the motion and the court denied it, prompting American Eagle to voluntarily dismiss the action without prejudice under Civ.R. 41(A)(1)(a).

{¶ 7} American Eagle refiled its complaint on March 22, 2022, this time alleging breach of contract (Count I) and declaratory judgment (Count II). The court issued a case management order setting deadlines for discovery, mediation, expert-witness disclosure, dispositive motions, a final settlement pretrial, and trial. Marco's moved to transfer pleadings, discovery, and transcripts from the first-filed case; the trial court granted its motion.

4.

**B. Marco's moves for summary judgment in the refiled action.**

{¶ 8} On March 16, 2023, Marco's again moved for summary judgment. It explained that Corcoran and Russell are the Principal Owners of the Area Representative ("AR"), American Eagle, and they, on behalf of American Eagle, agreed to seek and develop potential Marco's franchisees, assist those franchisees in opening their Marco's stores, train them, provide ongoing support, and perform store visits to ensure that stores were operated in accordance with Marco's standards. In consideration for those services, American Eagle was paid a percentage of initial franchise fees and monthly royalties collected at the stores they developed.

{¶ 9} When American Eagle renewed its ARA with Marco's, Corcoran and Russell signed a general release as Principal Owners of the AR. According to Marco's, this general release obligated Corcoran and Russell to perform under the ARA, and particularly under Sections 6.2, 6.18, 15.1, and 16.1.4, set forth above. Marco's maintained that Corcoran and Russell owed similar duties to Jeremiah's as personal guarantors under Ice 'Em's ARA with that franchising system.

{¶ 10} As it claimed in its notice of default, Marco's insisted that as a matter of law, the ARA with Jeremiah's prevented American Eagle's Managing Operators (i.e., Corcoran and Russell) from complying with the following provisions of the Marco's ARA: (1) Section 6.2, which required that the AR's business be under the "active full-time management" of the AR's Managing Operator (defined as "one or more of Area Representative's Principal Owners who are designated to supervise the operation of the business . . . and who have been previously approved by" Marco's); (2) Section 6.18,

5.

which required the Managing Operator or AR-OFC to devote "full-time efforts" of "not less than 40 hours per week" to the "management and attention" of Marco's business; (3) Section 15.1, which required the Managing Operator or AR's manager to "devote full-time, energy and best efforts to the management and operation of the Area Representative Business . . . ."; and (4) Section 16.1.4 which required the AR to confine its activities to Marco's business.

{¶ 11} Marco's maintained that (1) the ARA specified that "Area Representative" includes all of the AR's Principal Owners; (2) under the ARA, the AR *and* each of its Principal Owners were obligated to perform under the agreement; and (3) Corcoran and Russell both signed a "Guarantee, Indemnification, and Acknowledgment" as American Eagle's principals, pursuant to which they agreed to be bound by the covenants contained in Sections 7, 8, 9, 12, 14, and 15 of the ARA.

{¶ 12} Marco's claimed that there was an inherent conflict in Corcoran and Russell's obligation to market franchise opportunities, develop leads, and exercise the same responsibilities for two franchises with similar capital requirements in overlapping territories. It conceded that "it could have conceivably been possible" for American Eagle to meet its obligations to Marco's and for Corcoran and Russell to satisfy their competing obligations to Jeremiah's *if*, in accordance with the Jeremiah's ARA, they had sought and obtained approval from Jeremiah's for another individual to serve as a manager to operate Jeremiah's business. But Marco's contended that Russell's testimony at the injunction hearing made clear that while someone was being trained to serve in this

6.

role, no individual had yet been submitted for approval by Jeremiah's. Moreover, it emphasized that between April 2020, and October 2020, Russell and Corcoran had spent time assisting with site selection, franchisee development, and opening tasks for Jeremiah's business, therefore, Marco's claimed, they could not have been dedicating their full time, energy, and best efforts to Marco's business.

**C. American Eagle claims that questions of fact and ambiguity in the ARA preclude summary judgment.**

{¶ 13} American Eagle responded that (1) issues of fact prevented summary judgment, and (2) the ARA contains ambiguous provisions. It insisted that Marco's had attempted to shift the summary-judgment burden by purporting to require American Eagle to prove that it complied with the agreement rather than Marco's itself proving that American Eagle breached the agreement. And it claimed that Marco's had improperly relied on findings made by the trial court in connection with the motion for preliminary injunction, despite the higher degree of proof required to prevail on that motion. It emphasized that the court had actually found that there was opposing testimony regarding whether inherent conflicts prevented Russell and Corcoran from satisfying its duties to Marco's and Jeremiah's.

{¶ 14} American Eagle maintained that there was no evidence that it failed to meet any of the requirements in Section 6.18 of the ARA. It made similar arguments disputing Marco's contention that Russell and Corcoran had failed to devote "full time, energy and best efforts" to Marco's business under Section 15.1. And with respect to Section 16.1.4, American Eagle claimed that certain provisions of the ARA apply only to the corporate

7.

entity and not to the individual principals of the entity. It insisted that Section 16.1.4 required only *American Eagle* to confine its activities to Marco's business—not Russell and Corcoran. It highlighted covenants contained in the "Guarantee, Indemnification, and Acknowledgment," which, by its own terms, applied to only Sections 7, 8, 9, 12, 14, and 15 of the ARA—not Section 16.

{¶ 15} Finally, American Eagle argued that "full time efforts" is undefined and is ambiguous. It claimed that to the extent the ARA is ambiguous, such ambiguities must be resolved against Marco's as the party who drafted the ARA.

### D. The trial court grants summary judgment to Marco's.

{¶ 16} In a judgment journalized on July 12, 2023, the trial court granted summary judgment in favor of Marco's and dismissed American Eagle's claims. The trial court found that reading the provisions of the ARA as a whole, the agreement reflected the parties' intent that both American Eagle *and* its principals "would be bound to commit their combined full-time resources, efforts and loyalty to Marco's, and not another franchise opportunity." The court found that American Eagle failed to produce sufficient evidence that it had been or could have remained in compliance with this provision of the ARA while its principals simultaneously served as ARs for Jeremiah's.

{¶ 17} The trial court concluded that Russell and Corcoran, as principals of American Eagle, are the Managing Operators of the company for purposes of Sections 6.2, 6.18, and 15.1 of the ARA. It acknowledged that Russell had testified that he and Corcoran each average more than 40 hours per week managing Marco's business and that

8.

Marco's President and Chief Operating Officer, Anthony Libardi, testified at deposition that he cannot point to any duty under the ARA that American Eagle failed to perform because of Ice 'Em's agreement with Jeremiah's. It recognized that American Eagle "provided some evidence that during its tenure as AR, it remained in compliance with [Section 6.18] of the ARA despite its affiliation with Jeremiah's." And it observed that the Jeremiah's ARA allowed Ice 'Em to submit for approval a manager to operate its business under the agreement and that it had, in fact, hired such an individual, but had not yet sought approval from Jeremiah's.

{¶ 18} Nevertheless, the trial court interpreted Section 6.18 of the ARA as requiring "full-time efforts" of "not less than" 40 hours per week—meaning that 40 hours is the *minimum* amount of time managing operators are expected to devote to Marco's business—and Section 15.1 required them to devote "full time, energy and best efforts" to Marco's business. It agreed with Marco's that there is an inherent conflict in an AR's obligation to market franchising opportunities and generate leads for two separate franchise systems. It found that as principals of Ice 'Em, Russell and Corcoran had devoted time since April of 2020, assisting with site selection, franchise development, and opening tasks for Jeremiah's. And it emphasized that Ice 'Em had not yet sought approval by Jeremiah's for the person it hired to manage Jeremiah's business.

{¶ 19} The court acknowledged that in some provisions, the ARA distinguishes "between and among obligations required of the AR, the AR's Managing Operators, Principal Owners and/or AR-OFCs," but ultimately it disagreed with American Eagle's

9.

interpretation of Section 16.1.4. It recognized that Section 16.1.4 required ARs to confine its activities to Marco's business. It concluded that (1) the definition of "Area Representative" included American Eagle's principals; (2) the ARA reflects that the AR "and each of the Principal Owners" "jointly and severally" made all the representations, warranties, covenants and agreements set forth in the ARA, and "each is obligated to perform" under the ARA; (3) the Guarantee, Indemnification, and Acknowledgment refers to "Area Representative" as including American Eagle's principals and includes an unconditional guarantee by its principals that they agreed to be individually bound by Sections 7, 8, 9, 12, 14, and 15 of the ARA. As such, the trial court was persuaded that section 16.1.4 of the ARA required *Russell and Corcoran* to confine their activities to conducting Marco's business. It rejected American Eagle's argument that this provision applied only to American Eagle itself and not to its principals.

{¶ 20} Finally, the trial court explained that if its interpretation was confined to just Sections 6 and 15 of the ARA, it might be inclined to give some "credence" to American Eagle's arguments regarding ambiguity. It found, however, that when read as a whole, the ARA required American Eagle *and* Russell and Corcoran "to commit their combined full-time resources, efforts and loyalty to Marco's, and not another franchise opportunity." Because it was undisputed that Russell and Corcoran did not have someone else approved to fulfill Ice 'Em's obligations to Jeremiah's, and the Marco's ARA precluded them from fulfilling that role for Jeremiah's, the trial court found that

American Eagle's principals breached the ARA, justifying Marco's action in terminating the agreement.

{¶ 21} American Eagle appealed.  It assigns the following errors for our review:

FIRST ASSIGNMENT OF ERROR:  THE TRIAL COURT ERRED IN DETERMINING THAT SECTION 16.1.4 OF THE AREA REPRESENTATIVE AGREEMENT WAS ENFORCEABLE AGAINST GEORGE CORCORAN AND WILLIAM RUSSELL AS INDIVIDUALS.

SECOND ASSIGNMENT OF ERROR:  IN THE EVENT THAT THE ARA IS AMBIGUOUS, THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT BECAUSE THE INTENT OF THE PARTIES IS A FACTUAL ISSUE PRECLUDING SUMMARY JUDGMENT AND THE TRIAL COURT RESOLVED THE AMBIGUITIES IN THE STANDARDIZED CONTRACT IN FAVOR OF THE DRAFTER.

## II.  Standard of Review

{¶ 22} Appellate review of a summary judgment is de novo, *Grafton v. Ohio Edison Co.,* 77 Ohio St.3d 102, 105 (1996), employing the same standard as trial courts. *Lorain Natl. Bank v. Saratoga Apts.,* 61 Ohio App.3d 127, 129 (9th Dist. 1989).  The motion may be granted only when it is demonstrated:

(1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable

minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor. *Harless v. Willis Day Warehousing Co.,* 54 Ohio St.2d 64, 67 (1978); Civ.R. 56(C).

{¶ 23} When seeking summary judgment, a party must specifically delineate the basis upon which the motion is brought, *Mitseff v. Wheeler*, 38 Ohio St.3d 112 (1988), syllabus, and identify those portions of the record that demonstrate the absence of a genuine issue of material fact. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). When a properly supported motion for summary judgment is made, an adverse party may not rest on mere allegations or denials in the pleadings, but must respond with specific facts showing that there is a genuine issue of material fact. Civ.R. 56(E); *Riley v. Montgomery*, 11 Ohio St.3d 75, 79 (1984). A "material" fact is one which would affect the outcome of the suit under the applicable substantive law. *Russell v. Interim Personnel, Inc.*, 135 Ohio App.3d 301, 304 (6th Dist. 1999); *Needham v. Provident Bank*, 110 Ohio App.3d 817, 826 (8th Dist. 1996), citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

### III.  Law and Analysis

{¶ 24} In its assignments of error, American Eagle argues that (1) the trial court erred when it determined that Section 16.1.4 of the ARA was enforceable against Russell and Corcoran individually; and (2) to the extent that the ARA is ambiguous concerning the applicability of Section 16.1.4 to Russell and Corcoran individually, the trial court

12.

erred in granting summary judgment to Marco's because it resolved issues of fact and improperly construed ambiguities in favor of Marco's, the drafting party.

## A. Section 16.1.4

{¶ 25} In its first assignment of error, American Eagle challenges the trial court's conclusion that Section 16.1.4 of the ARA was enforceable against Russell and Corcoran individually. American Eagle acknowledges that Section 16.1.4 requires ARs to confine its activities to conducting business related to the Marco's ARA, but it claims that by its terms, Section 16.1 applies only where the AR is an organized entity recognized by state law and, conversely, does not apply if entered into by an individual. As such, it insists, Section 16.1.4 may be applied only to American Eagle as an entity—not to Russell and Corcoran, its individual principals. Related to this, American Eagle contends that if the parties had intended that the defined terms "AR" and "Area Representative" always included the principals of a corporate entity, then distinctions between the two contained throughout the agreement would be rendered unnecessary and those distinctions would be meaningless.

{¶ 26} American Eagle acknowledges that Russell and Corcoran signed the Guarantee, which binds them individually with respect to certain covenants— specifically, those contained in Sections 7, 8, 9, 12, 14, and 15—but it emphasizes that the Guarantee specifically omits Section 16, thereby demonstrating the parties' clear intent that Section 16.1.4 applies only to American Eagle and not to Russell and Corcoran as individuals.

13.

**{¶ 27}** Marco's complains that American Eagle focuses entirely on the interpretation of Section 16.1.4 of the ARA and ignores the various other provisions examined by the trial court addressing the obligation of American Eagle—and Russell and Corcoran as its Principal Owners—to devote full time and best efforts to Marco's business. It insists that reading Section 16.1.4 in the context of the entire ARA, the trial court properly concluded that American Eagle breached the ARA when Russell and Corcoran contracted with Ice 'Em to serve as Jeremiah's area representative.

**{¶ 28}** In reply to Marco's arguments, American Eagle argues that the trial court made it clear that its ruling specifically hinged on its finding that American Eagle breached Section 16.1.4. It maintains that Marco's failure to directly address Section 16.1 is a tacit admission that the trial court committed reversible error.

### B. Rules for Contract Interpretation

**{¶ 29}** In interpreting a contract, we presume that the intent of the parties is reflected in the plain language of the contract, and we seek to give effect to the parties' intent by examining the contract as a whole. *Beverage Holdings, L.L.C. v. 5701 Lombardo, L.L.C.,* 2019-Ohio-4716, ¶ 13, citing *Westfield Ins. Co. v. Galatis*, 2003-Ohio-5849, ¶ 11; *Sunoco, Inc. (R & M) v. Toledo Edison Co.,* 2011-Ohio-2720, ¶ 37. Where the language of a contract is plain and unambiguous, "we enforce the terms as written," and will "not turn to evidence outside the four corners of the contract to alter its meaning." *Id.* "When considering the language of a particular contractual provision, '[c]ommon words * * * will be given their ordinary meaning unless manifest absurdity

14.

results or unless some other meaning is clear from the face or overall contents of the agreement.'" *Id.*, quoting *Cincinnati Ins. Co. v. Anders,* 2003-Ohio-3048, ¶ 34, citing *Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241 (1978), paragraph two of the syllabus. Technical terms will be given their technical meaning "'unless a different intention is clearly expressed.'" *Sutton Bank v. Progressive Polymers, L.L.C.,* 2020-Ohio-5101, ¶ 15, citing *Foster Wheeler Enviresponse v. Franklin Cty. Convention Facilities Auth.*, 78 Ohio St. 3d 353, 361 (1997). Importantly, "extrinsic evidence cannot be considered to give effect to the contracting parties' intentions when the language of the contract is clear and unambiguous." *Sunoco* at ¶ 66, citing *Shifrin v. Forest City Ents., Inc.*, 64 Ohio St.3d 635 (1992), syllabus.

### C. The Trial Court's Findings and Conclusions

{¶ 30} The trial court reached several conclusions in interpreting the ARA, and it recited some of the factual assertions offered by Russell at the preliminary-injunction hearing, and by Libardi at the injunction hearing and at deposition.

{¶ 31} We agree with certain conclusions reached by the trial court in interpreting the ARA. Specifically, we agree:

(1) Page six, paragraph one of the ARA's Summary of Terms provides that the ARA is between Marco's and the "Area Representative" (i.e., American Eagle), including its "Principal Owners";

(2) Russell and Corcoran are the Principal Owners of American Eagle;

(3) In signing the Summary of Terms of the ARA, Russell and Corcoran agreed that American Eagle and each of them, "jointly and severally, makes all of the representations, warranties, covenants and agreements" set forth in the ARA and "each is obligated to perform hereunder";

(4) Section 6.2 requires that because American Eagle is a corporation, "active full-time management" of its business must be "by one or more" of its Principal Owners—i.e., Russell and Corcoran. Section 6.2 references Section 6.18 as more fully setting forth what is meant by "active full-time management." This provision defines "Managing Operator" to mean "one or more of Area Representative's Principal Owners, who are designated to supervise the operation of the business contemplated under this Agreement and who have been previously approved by Franchisor";

(5) Section 6.18 specifies that the Managing Operator or one of the AR's AR-OFCs "shall devote his or her full-time efforts, of not less than 40 hours per week" to the management and attention of Area Representative Business. It requires this individual to respond to all franchise sales leads; respond to all customer concerns or problems identified by the franchisor; take individual action to exercise American Eagle's promotion and development obligations; take other action as may reasonably be required in connection with the exercise of promotion and development obligations; and assist in the establishment and management of an "Advertising Cooperative for Stores in the Territory."

16.

(6) Under Section 15.1, the Managing Operator covenants to "devote full time, energy, and best efforts to the management and operation of Area Representative Business in full compliance with the Area Representative Manual"; and

(7) Russell and Corcoran executed a Guarantee, Indemnification, and Acknowledgment, pursuant to which they agreed to be individually bound by all of the covenants contained in Sections 7, 8, 9, 12, 14, and 15 of the ARA.

**{¶ 32}** We also agree with the trial court concerning its recitation of certain facts that were presented by the parties, including:

(1) Russell and Corcoran, as members of Ice 'Em, LLC, entered into an ARA with Jeremiah's;

(2) Although the ARA with Jeremiah's permitted Ice 'Em to submit for approval by Jeremiah's a manager to operate the business under the ARA—and it hired and trained someone for this role—approval had not yet been sought from Jeremiah's;

(3) Since April of 2020, as principals of Ice 'Em, Russell and Corcoran devoted time to site selection, franchisee development, and opening tasks for Jeremiah's;

(4) Russell testified that he and Corcoran each average more than 40 hours per week managing American Eagle's operations as AR for Marco's;

17.

(5) Libardi conceded that Marco's cannot point to any express management or operational duty in the ARA that was not fulfilled on account of Ice 'Em's relationship with Jeremiah's;

(6) American Eagle provided evidence that during its tenure as AR for Marco's, American Eagle remained in compliance with duties owed to Marco's under Section 6.18 of the ARA;

(7) In addition to time spent by Russell and Corcoran, several AR-OFCs assisted American Eagle with its responsibilities to provide support to existing Marco's franchisees, but only existing franchisee-support responsibilities may be delegated to AR-OFCs;

(8) American Eagle provided evidence that since Russell and Corcoran executed their agreement with Jeremiah's, they have continued to meet their development and support responsibilities to Marco's;

(9) Libardi is unaware of any evidence showing that American Eagle has "dropped the ball" on its franchise development or other responsibilities; and

(10)    Libardi believes there are conflicts inherent in Russell and Corcoran serving as ARs to both Marco's and Jeremiah's.

### D.  Interpreting Section 16.1.4

{¶ 33} In reaching its conclusion that American Eagle breached its duties under the ARA, the trial court explained that "[w]ere . . . Section 6 and Section 15 of the ARA the only provisions at issue," it "might be more inclined to give some credence to

18.

[American Eagle's] arguments regarding ambiguity."  The court concluded, however, that Section 16.1.4 was applicable to Russell and Corcoran and required that they confine their activities to Marco's business.  The court found that American Eagle "has not produced sufficient evidence that it had been or could have remained in compliance with this provision of the ARA while its principals simultaneously served as area representatives for Jeremiah's."  We disagree with the trial court's interpretation of Section 16.1.4.

{¶ 34} Section 16 of the ARA provides as follows:

**16      AREA REPRESENTATIVE THAT IS A CORPORATION, PARTNERSHIP, OR LIMITED LIABILITY COMPANY**

16.1     If Area Representative is an organized entity recognized by state law, such as a corporation, a limited liability company, serial limited liability company, partnership, limited partnership, or some other form of entity, then among other things it shall comply, except as otherwise approved in writing by Franchisor, with the following requirements throughout the Term of this Agreement:

16.1.1    Area Representative shall furnish Franchisor with its articles of incorporation, bylaws, certificate of organization, operating agreement, partnership agreement or other organizational governing documents as is relevant to the form of organization, and

19.

any other documents Franchisor may reasonably request, and any amendments thereto.

16.1.2 Area Representative shall stop transfer instructions against the transfer on its records of any equity securities; and shall issue only securities upon the face of which the following legend legibly and conspicuously appears:

*The transfer of equity interest is subject to the terms and conditions of an Area Representative Agreement with Marco's Franchising, LLC dated _____, 201__. Reference is made to the provisions of such Area Representative Agreement and to the Articles and Bylaws of this Corporation.*

16.1.3 Area Representative shall maintain a current list of all owners of record and all beneficial owners of any class of voting stock and/or other interests in Area Representative and shall furnish the list to Franchisor upon request.

16.1.4 Area Representative shall confine its activities to only: (a) conducting the business licensed under this Agreement; (b) conducting the business licensed under a franchise agreement with Franchisor.

{¶ 35} American Eagle argues that these provisions applied only to *it* and not to Russell and Corcoran. We agree.

20.

**{¶ 36}** Section 16 is titled "AREA REPRESENTATIVE THAT IS A CORPORATION, PARTNERSHIP, OR LIMITED LIABILITY COMPANY." The title makes clear that the entire section is applicable only if the AR is an organized entity, as opposed to an individual. Here, of course, the AR *is* an organized entity, so the provision applies. Section 16.1 sets forth requirements for the entity, including, under Section 16.1.4, that it confine its activities to Marco's business. But it applies *only to the entity*— not to its Principal Owners. This is clear if one looks at the other requirements set forth in Section 16.1.

**{¶ 37}** Under Section 16.1.1, the AR must furnish Marco's with its articles of incorporation, bylaws, certificate of organization, etc. *Entities*—not its individual principal owners—are governed by these types of documents. Under Section 16.1.2, the AR must ensure that equity securities—i.e., "securit[ies] representing an ownership interest in a corporation," *see* Black's Law Dictionary (11th Ed. 2019)—conspicuously state that the transfer of equity interest is subject to the terms of the ARA. Ownership of e*ntities*—not its individual principal owners—is accomplished through the issuance of equity securities. Under Section 16.1.3, the AR must maintain a list of owners of record and owners of voting stock. Obviously, *entities*—not their individual principal owners— are owned. It can reasonably be interpreted then that Section 16.1.4—which, like Sections 16.1.1 to 16.1.3, refers to "Area Representative"—applies only to the *entity* and not its individual principal owners. Only the entity must confine its activities to Marco's business.

21.

**{¶ 38}** The other provisions Marco's claims were violated here—Sections 6.2, 6.18, and 15.1—reinforce this interpretation. Those sections, by their express language, impose obligations on specific individuals connected with the AR. *See* Section 6.2 ("*If Area Representative is a corporation . . .* , such management must be by one or more of Area Representative's Principal Owners who are designated to supervise the operation of the business contemplated under this agreement and to have been previously approved by Franchisor or (the '*Managing Operator*')"); Section 6.18 ("Area Representative (*or if Area Representative is a corporation . . . , the Managing Operator*) or one of Area Representative's AR-OFCs shall devote his or her full-time efforts, of not less than 40 hours per week, to the management and attention of the Area Representative business"); Section 15.1 ("Area Representative (*or if Area Representative is a corporation . . . , the Managing Operator*) or Area Representative's Manager shall devote full time, energy, and best efforts to the management and operation of the Area Representative Business in full compliance with the Area Representative Manual."). (Emphasis added.) If it was intended that Section 16.1.4 applied to American Eagle *and* its Principal Owners, it would have been worded similarly to Sections 6.2, 6.18, and 15.1. Or at the very least, it would not have been worded to so conspicuously apply only to organized entities.

**{¶ 39}** Additionally, Exhibit A to the ARA—the Guarantee, Indemnification, and Acknowledgment—expressly binds Russell and Corcoran, individually, to the covenants contained in "Sections 7, 8, 9, 12, 14, and 15 of the ARA." It does not expressly bind them to the covenants contained in Sections 6 or 16. This is not to say that Russell and

22.

Corcoran owe no duties under either of these provisions. To the contrary, as described above, Sections 6.2 and 6.18 (both of which Marco's claim were violated here) specifically impose duties on the "Managing Operator," which as defined within those provisions, includes Russell and Corcoran.[1] But that is because by their plain language, those provisions are expressly applicable to the Managing Operator. In interpreting a contract, a court must "avoid any interpretation that would render terms or provisions superfluous or meaningless." *Eagle Realty Investments, Inc. v. Dumon*, 2022-Ohio-4106, ¶ 12 (1st Dist.). To interpret "Area Representative" as *always* including the Principal Owners and Managing Partner would render the language in Sections 6.2, 6.18, and 15.1 and Exhibit A superfluous and meaningless. Accordingly, we find American Eagle's first assignment of error well-taken. Because we find that Section 16.1.4 unambiguously applies to only the entity of American Eagle, we deny American Eagle's second assignment of error as moot.

{¶ 40} We note that Marco's seeks to highlight claimed breaches of American Eagle's other obligations under the ARA—Sections 6.2, 6.18, and 15.1—as bases on which it was entitled to summary judgment. Although the trial court identified various

---

[1] Section 6.18 also allows the duties described in that section to be performed by an AR-OFC. Russell testified that in addition to him and Corcoran, there are five AR-OFCs who were trained at Marco's University and are granted access to service stores and perform visitations. Those other five AR-OFCs are not American Eagle employees. They are employed by Venice Pizza and Enterprise Pizza, which are Marco's franchisees that Russell and Corcoran own and operate. But Russell explained that "because they are above store people and we have multiple GMs there, . . . they got their AROFC clearance to be able to go out and do above store services."

23.

factual disputes related to Section 6.2, 6.12, and 15.1 at pages 7-11 of its opinion, it never decided whether these factual disputes are sufficient to preclude summary judgment in Marco's favor. Instead, the court granted summary judgment to Marco's based solely upon its conclusion that Section 16.1.4 applied to Russell and Corcoran individually, and merely noted that "[w]ere [Sections 6.2, 6.18, and 15.1] the only provisions at issue, the Court might be more inclined to give some credence to Plaintiff's arguments regarding ambiguity." Because the trial court did not decide whether any genuine issues of material fact remain regarding American Eagle's alleged breaches of Section 6.2, 6.18, and 15.1 of the ARA, we must refrain from reaching a decision on these issues in the first instance. *See Allen v. Bennett,* 2007-Ohio-5411, ¶ 21 (9th Dist.), citing *Murphy v. Reynoldsburg,* 65 Ohio St.3d 356, 360 (1992) ("Because [the court of appeals] acts as a reviewing court, it should not consider for the first time on appeal issues that the trial court did not decide."). Therefore, our decision here is limited to reversing the trial court's finding that American Eagle, through its principals, breached Section 16.1.4 of the ARA, and we reverse the trial court's judgment on those grounds only. On remand, the trial court is not precluded from addressing any arguments the parties made below that fall outside the scope of this decision.

### IV. Conclusion

{¶ 41} Section 16.1.4 of the ARA was applicable only to American Eagle and not to Russell and Corcoran individually, therefore, the ARA was not violated based merely on their engaging in activities outside Marco's business. We find American Eagle's first

assignment of error well-taken, dismiss its second assignment of error as moot, and reverse the July 12, 2023 judgment of the Lucas County Court of Common Pleas. We remand this matter to the trial court for proceedings consistent with this decision. Marco's is ordered to pay the costs of this appeal under App.R. 24.

Judgment reversed<br>and remanded.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J.

_____
JUDGE

Christine E. Mayle, J.

Gene A. Zmuda, J.
CONCUR.

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.