[Cite as *Hey Listen Mandyhan, L.L.C. v. Trody*, 2026-Ohio-2348.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

Hey Listen Mandyhan, LLC          Court of Appeals No. {48}L-25-00199

      Appellee                         Trial Court No. CVG-25-08806

v.

Rick Trody                             **DECISION AND JUDGMENT**

      Appellant                       Decided: June 18, 2026

* * * * *

Daniel J. Maloney, for appellee.

Rashad Z. Daoudi, for appellant.

* * * * *

**ZMUDA, J.**

## I. Introduction

{¶ 1} Appellant, Rick Trody, appeals from the August 14, 2025 judgment of the Toledo Municipal Court overruling his objections to the magistrate's decision granting possession of the disputed property to appellee, Hey Listen Mandyhan, LLC ("Mandyhan"). For the following reasons, we reverse the trial court's judgment and remand this matter for further proceedings.

## A. Facts and Procedural Background

{¶ 2} This appeal arises from Mandyhan's attempt to evict Trody from a parcel of land it owned in Toledo, Lucas County, Ohio. The parcel contains a single structure—a garage that was previously used as an auto repair business. Mandyhan filed a complaint for forcible entry and detainer of the parcel, pursuant to R.C. Chapter 1923, on May 28, 2025. Mandyhan attached a copy of a "Residential Real Estate Lease Agreement" that the parties executed on January 4, 2022.[1] The lease obligated Trody to pay monthly rent in the amount of $459.10 on or before the first day of each month. It is undisputed that Trody paid the monthly rent through March, 2025. Trody did not make the rent payments in April and May, 2025. As a result, On May 2, 2025, Mandyhan posted a three-day notice at the property ordering Trody to vacate the property. Trody did not vacate the property and Mandyhan filed its complaint.

{¶ 3} The matter proceeded to a hearing before the magistrate on July 8, 2025. In an opening statement, Trody informed the court that he intended to show that the parties had contemporaneously entered into both the lease and a purchase agreement for the property, and that these agreements constituted a land installment contract pursuant to R.C. 5313.02. He noted that if the parties had entered into a land installment contract, that he was entitled to a ten-day period to repay the arrearage and, that since he had already paid more than 20 percent of the purchase price, that any proceedings seeking to

---

[1] Mandyhan executed the agreements described herein on December 14, 2021. The parties agree that the agreements were executed "simultaneously" and assign Trody's signature on January 4, 2022, as the date they became effective.

2.

forfeit his interest in the property and evict him had to be accomplished through foreclosure proceedings rather than a forcible entry and detainer action. Mandyhan declined to make an opening statement and the matter proceeded to a hearing, during which Mandyhan's witnesses provided the following testimony:[2]

**Testimony of Jennifer Marie**

{¶ 4} Jennifer Marie testified that she is a representative for Mandyhan. Her responsibilities include collecting rent from tenants and paying the taxes and insurance on their properties. She confirmed that Mandyhan is the owner of the disputed property. When presented with Exhibit B of the complaint, she identified it as the lease agreement between the parties for the property. The lease agreement required Trody to pay monthly rent of $459.10 to Mandyhan and, at the time of the hearing, he had been delinquent in those payments since March 1, 2025.

{¶ 5} She next identified Exhibit C of the complaint as the three-day notice to vacate that her "associate" Garrison Hill had posted at the property on May 2, 2025. Trody attempted to make the delinquent payments after he received the notice. Mandyhan declined them.

{¶ 6} On cross-examination, Marie further described the terms of the lease agreement, noting that it required Trody to provide a security deposit of $3,000. She denied knowledge of another agreement between the parties titled "Residential Real Estate Purchase Agreement." Trody then presented her with a copy of that agreement.

---

[2] Testimony that is not relevant to our analysis has been omitted.

3.

After reviewing the document, she confirmed its basic terms—a down payment of $3,000, a purchase price of $35,000, and seller financing of $32,000. She next stated that while the lease agreement stated the rent price, Trody actually paid $570 month. The additional funds were allocated towards taxes and insurance on the property. The purchase agreement Trody introduced included a term requiring him to pay the taxes and "assessments" on the property.

{¶ 7} Trody then introduced a payment ledger prepared by Mandyhan reflecting his rent payments. Marie could not calculate the total amounts paid according to the ledger and what the remaining balance of the purchase price would be, assuming the sales agreement was valid.[3] She confirmed, however, that she did not provide Trody with a ten-day notice to make the delinquent payments.

{¶ 8} On redirect examination, Marie testified that the property was zoned "commercial." She then identified exhibit C as "the zoning" for the property, which identified it as "neighborhood commercial." She also identified Exhibit D as the definition of neighborhood commercial, providing "[t]he CN * * * zoning district is intended to accommodate pedestrian oriented small-scale retail and service businesses that serve nearby residential areas." Over Trody's objection, Marie testified that she did not believe the zoning permitted residential structures. She also recognized the lease

---

[3] Trody requested that the trial court take judicial notice of this and all other calculations referenced during the hearing. The trial court never explicitly ruled on these requests, simply instructing Trody to "proceed."

4.

agreement's inclusion of a "purchase portion" but concluded that if appellant defaulted on his rent, that the purchase portion would be terminated.

{¶ 9} On recross examination, Marie could not recall whether there were any other residential properties in the area. She also denied having any knowledge that appellant was residing at the property under the lease agreement. She concluded her testimony through an additional redirect examination by stating that the parties had not entered into a land installment contract.

### Testimony of Garrison Hill

{¶ 10} Mr. Hill testified that he posted the three-day notice at the property on May 2, 2025. On cross-examination, he confirmed that the notice did not provide appellant with ten days to vacate the premises.

{¶ 11} At the conclusion of Mr. Hill's testimony, Trody moved for a judgment in his favor. He argued that the preponderance of the evidence showed that the parties had entered into a land installment contract and, therefore, that Mandyhan could not proceed with an eviction that only provided a three-day notice to vacate rather than the ten-day notice to cure the delinquent payments as required under R.C. 5313.06. He further argued that because he had paid more than 20% of the purchase price on the contract through prior rent payments that Mandyhan had to proceed through a foreclosure action rather than an eviction pursuant to R.C. 5313.07. The court took the motion under advisement and Trody proceeded with the presentation of his defense, during which the parties elicited the following testimony:

5.

## Testimony of Rick Trody

{¶ 12} Trody testified that he entered into an agreement with Mandyhan to purchase the property in November, 2021. He also stated that this was Mandyhan's understanding of the agreement based on representations its representatives made to him at that time. He next described improvements he made to the property with Mandyhan's approval. These included dividing a portion of the property that had been an auto repair business to establish a residential apartment for his use. He stated that Mark Grabow, the Mandyhan representative that executed the agreement, provided him with the materials and paint for the renovation. Trody had lived at the property since making the renovations. Mandyhan never objected to him residing at the property.

{¶ 13} Trody then turned to the ledger he received from Mandyhan. He confirmed that he had made $21,543 in total payments under the agreement, with $12,399 of that amount going toward interest on the financing. After significant dispute between the parties regarding what the ledger showed, the court questioned Trody directly. He confirmed to the court that he paid a monthly fee of $574 to Mandyhan.

{¶ 14} On cross-examination, Trody stated that he had previously run a commercial auto repair business at the property. He was unaware of any requested variances from the commercial zoning restriction to allow for residential use of the property. Trody concluded his testimony by describing the property as a garage with a small entry area that leads into the apartment he created. The apartment had a couch, tv, bed, kitchen, and bathroom.

6.

## Closing arguments and magistrate's decision

{¶ 15} In closing, Mandyhan noted that the parties had entered into a lease agreement for the property in late 2021 or early 2022. It argued that the property was zoned for commercial purposes and that Trody's conversion of it into a residence did not render it a residential property subject to a land installment contract. Further, Mandyhan acknowledged the purchase agreement the parties entered into but claimed that this was an option to purchase the property separate from the lease agreement and was only effective upon Trody's completion of his lease obligations. Since Trody failed to make the monthly payments in March and April, 2025, Mandyhan argued that he could not exercise the purchase option, had violated the lease, and was subject to the forcible entry and detainer action.

{¶ 16} In his closing, Trody argued that the parties entered into a land installment contract for a residential property. Under that agreement, he argues, he was entitled to the protections described in R.C. Chapter 5313 before he could be dispossessed of the property, including a ten-day notice to make the delinquent payments before forfeiting his rights under the agreement and the requirement that any adverse action had to proceed through a foreclosure action. He also argued that if the magistrate determined that the agreement did not meet the statutory requirements described in R.C. 5313.02 to establish an enforceable land installment contract, that the purchase agreement substantially complied with the statute and was enforceable.

{¶ 17} The magistrate issued its decision, with findings of fact and conclusions of law, on July 17, 2025. It determined that there was no residential dwelling on the

7.

property, a predicate for the application of R.C. Chapter 5313 to the parties' agreement, and that the agreement did not meet the statutory requirements for a land installment contract as described in R.C. 5313.02. The magistrate further found that the parties' agreement was ambiguous and, therefore, required it to determine the parties' intent. It held that the parties' intended to enter into a lease agreement with a separate purchase option to be executed at the conclusion of the lease agreement. As a result, it found that Trody was not entitled to utilize the protections of R.C. Chapter 5313 and that the tenancy be terminated with possession of the property to be returned to Mandyhan.

**Trody's Objections to the Magistrate's Decision and the Trial Court's Judgment**

{¶ 18} Trody filed his objections to the magistrate's decision on July 31, 2025. Relevant to the present appeal, Trody argued that the magistrate (1) incorrectly found that the property's commercial zoning precluded the premises from being considered a dwelling, (2) failed to consider whether the agreements substantially complied with the requirements of a valid land installment contract, and (3) erroneously interpreted the parties' intent to be that they executed a lease with a purchase option after finding the agreements were ambiguous.

{¶ 19} The trial court overruled Trody's objections. In doing so, it found that the magistrate had not relied on the property's commercial zoning in finding that there was not a dwelling on the property but that "the stated purpose of the occupied structure at the time of its building was non-residential[.]" Noting that R.C. 5313.01(B) defines property subject to a land installment contract as "real property located in this state improved by virtue of a dwelling having been erected on the real property," the court concluded "that

8.

Trody's failure to erect a new dwelling on the property precluded the existing building from being considered a dwelling." The court then found that because the property was not subject to a land installment contract as it lacked a dwelling, that the magistrate's alleged error in failing to consider whether the parties' agreement met the requirements of a land contract was moot. Finally, the court found that the magistrate correctly resolved the ambiguities in the parties' agreements because it found Mandyhan's witness more credible when she denied that the parties had entered into a land installment contract. Lastly, since the lease agreement included an integration clause that stated the lease was the entire agreement between the parties, the trial court found that the purchase agreement could not alter its terms and, therefore, found that the magistrate properly found that the parties intent was to execute a lease with an option to purchase at the conclusion of that lease. The trial court's judgment was memorialized on August 14, 2025.

## B. Assignments of Error

{¶ 20} Trody timely appealed and asserts the following errors for our review:

1. The trial court abused its discretion by finding that the structure on the property when appellant took possession is not a dwelling.

2. The trial court erred as a matter of law by not analyzing the parties' agreement for substantial compliance under R.C. 5313.02.

3. The trial court erred as a matter of law by reforming the parties' Residential Real Estate Purchase Agreement into a Lease with an Option to Purchase.

## II. Law and Analysis

{¶ 21} Each of Trody's assignments of error allege that the trial court erred in overruling his objections to the magistrate's decision. "Generally, we review a trial court' decision on objections to a magistrate's decision only for an abuse of discretion." *Slak v. Strozier,* 2024-Ohio-286, ¶ 19 (6th Dist.). "However, even if a case was initially heard by a magistrate, the appropriate standard of review in a contract case is whether the trial court erred as a matter of law." *Id.* Because they inform our resolution of Trody's second assignment of error, we begin with Trody's first and third assignments of error.

### a. The trial court based its finding that the property did not contain a dwelling on an inapplicable standard.

{¶ 22} In his first assignment of error, Trody argues that the trial court erred in finding that the parties could not have entered into a land contract because there was no dwelling on the property. He argues that the magistrate ignored the language of the parties' agreements and the facts before it and, instead, relied on the "pre-existing" use of the building as "non-residential" to determine that it was not a dwelling. Further, he argues that the trial court's conclusion that a dwelling did not exist because he did not "erect" a dwelling on the property was unsupported.

{¶ 23} It is undisputed that land installment contracts are only subject to the application of R.C. Chapter 5313 if the property to be transferred includes a dwelling. *P.M.D. Land Co. v. Warner Realty,* 2009-Ohio-6704, ¶ 37 (11th Dist.). R.C. Chapter 5313 does not apply to properties that are "purely" or "essentially commercial." *See Johnson v. Maxwell,* 51 Ohio App.3d 137, 139 (9th Dist. 1988); *Retirement Management*

10.

*Co. v. Nsong,* 2017-Ohio-5869, ¶ 17 (10th Dist.).  We note that R.C. Chapter 5313 is "essentially a consumer protection law" that is "intended to prevent a windfall to a vendor who has previously collected substantial sums under a land contract and/or has actually recovered the property." *Kossoudji v. Stamps,* 2016-Ohio-7693, ¶ 42.  The statute grants the vendee under a land installment contract the right to cure any missed payments within ten days before forfeiting their rights and requires a vendor to seek forfeiture of the vendee's rights under the contract through a foreclosure action if the vendee has paid more than 20% of purchase price. R.C. 5313.06 and 5313.07.  The party claiming the protections of R.C. Chapter 5313, in this case Trody, has the burden to show that the subject property is improved by a dwelling.  *P.M.D.* at ¶ 33.

{¶ 24} Whether a property contains a dwelling is a question of fact. *See Nsong* at ¶ 16-19 (holding that the facts before the court did not establish that a dwelling existed on the property in dispute).  To reach this determination, a trial court must consider the facts in the record.  *Johnson* at ¶ 139-140 (holding that appellant failed to cite any evidence in the record to establish that a dwelling existed on the property); *Nsong* at ¶ 18. In both *Johnson* and *Nsong,* the trial court recognized the commercial nature, generally, of the property but reviewed the record before it to determine whether the party seeking the protections of R.C. Chapter 5313 presented evidence to show that a dwelling had been established on the property.  We find that this is the applicable standard on which to review a party's argument that there is a dwelling, making the property subject to transfer through a land installment contract as described in R.C. Chapter 5313.

11.

{¶ 25} Here, the evidence before the magistrate established that the property was zoned commercial. Trody also testified that he ran a commercial auto repair business on the property for a short time. There was also evidence to show that the parties entered into two separate agreements related to the property. The lease agreement, attached to Mandyhan's complaint, expressly described the lease as "residential" in nature. The terms of the lease provides that the "premises shall be used and occupied by [Trody] exclusively *as a private single family residence*, and neither the premises nor any part of thereof shall be used at any time [for commercial purposes or for any] purpose other than as a *private single family residence*." (Emphasis added). Contemporaneous with the lease agreement, the parties executed a "*Residential* Real Estate Purchase Agreement." (Emphasis added). Trody also testified that he had converted a portion of the property into an apartment, purportedly with Mandyhan's permission, and had been residing at the property for several years. Put simply, there was evidence in the record that supported finding either that the property was commercial or that it contained a residential dwelling. The trial court was obligated to review the evidence and resolve this question of fact. It did not.

{¶ 26} Instead, the trial court applied two invalid standards to reach its determination. First, the trial court held that the property did not include a dwelling because it was in a commercial zone and the "stated purpose of the occupied structure at the time of its building was non-residential[.]" Thus, the trial court relied only on the original purpose of the improvement to determine that no dwelling existed on the property. There is no indication that the trial court considered the evidence in the record

12.

regarding the current status of the property and whether it now contained a dwelling despite its past commercial use.

{¶ 27} The trial court also held that a dwelling did not exist, in part, because Trody did not "erect" a dwelling on the property but lived in a preexisting structure. R.C. 5313.01(B) defines "property" subject to a land installment contract as real property "improved" by "virtue of a dwelling having been erected[.]" The trial court concluded that because Trody did not erect the original improvement to the property, that the building could not constitute a dwelling. The trial court did not consider any facts in the record showing that renovations had been made to the property and relied on its prior use as a commercial business to find that it did not contain a dwelling. The trial court's standard incorrectly adds an additional requirement the party seeking to apply R.C. Chapter 5313 must establish—that is, that they erected the dwelling as an improvement to the property. This interpretation precludes any renovated properties from being established as a dwelling subject to a land installment contract. As a result, the trial court applied an incorrect legal definition when it determined that there was not a dwelling on the property.

{¶ 28} In sum, the trial court based its finding on two legally inapplicable standards and failed to weigh the evidence in the record when it held that the property did not include a dwelling. When a trial court misstates the law or applies the law incorrectly, that error is grounds for reversal. *In re. K.M.P.*, ¶ 5 (6th Dist.). For these reasons, we find Trody's first assignment of error well-taken.

13.

## b. The trial court erred in finding an ambiguity in the parties' agreement and relying on the parties' testimony to determine their intent.

{¶ 29} In his third assignment of error, Trody argues that the trial court erred in finding that the parties' agreement was ambiguous, allowing it to rely on the parties' testimony to determine their intent. Generally, a contract must be construed to carry out the intent of the parties. *Slak,* 2024-Ohio-286, at ¶ 20. Courts "presume the parties' intent is reflected in the plain language of [a contract]." *Id.* "If the contract language is clear and unambiguous, a court must enforce the terms as written, without turning to evidence beyond the four corners of the agreement." *Id.* "In that case, construing the document is a matter of law that we review de novo." *Id.* "Similarly, the question of whether an ambiguity exists is a question of law that we review de novo." *Id.* If a contract is ambiguous, its interpretation is a question of fact and the court may consider evidence outside the four corners of the agreement to determine the parties' intent. *American Eagle Investments, Inc. v. Marco's Franchising, LLC,* 2024-Ohio-3038, ¶ 29 (6th Dist.). Here, we find that the parties' agreement was not ambiguous as a matter of law and, therefore, the trial court erred in considering the parties' testimony to determine their intent.

{¶ 30} The record shows that the parties entered into two written agreements related to the property. The lease agreement, attached to Mandyhan's complaint, plainly identifies terms that suggest the parties' intent in entering into an agreement was for the purchase of the property. Section 2 of the lease states "[u]pon the execution of this Lease Agreement, [Trody] agrees to pay the sum of $3,000 as a down payment on the purchase

14.

of the property."  It then expressly references a purchase agreement for the property and states that if "the purchase agreement is breached, canceled, or terminated by either party, then [the down payment] will be released to [Mandyhan] as a security deposit for this Lease Agreement."  Thus, the plain language of the lease agreement contemplates a separate purchase agreement for the property and a $3,000 "down payment" on that purchase that will only become a security deposit under the lease if it or the purchase agreement are "breached, canceled, or terminated."  In other words, if Trody satisfied the obligations in the lease and the purchase agreement, the $3,000 serves as a down payment on the purchase of the property.  Notably, the lease agreement does not reference an "optional" purchase.

{¶ 31} The purchase agreement is likewise explicit as to the parties' unambiguous intent.  It states, in relevant part:

> This agreement made this 14th day of December, 2021 by and between [Mandyhan, referred to as "seller"] and [Trody, referred to as "purchaser"].
>
> * * *
>
> Whereas, the parties have reached an agreement under which purchaser shall rent and purchase the premises and seller shall lease and sell the same to purchaser; and
>
> Whereas, the parties desire to state the terms of their agreement in this writing and the exhibits attached hereto,
>
> Now, therefore, for valuable consideration, the receipt of which is hereby acknowledged, the parties hereto agree to as follows:
>
> 1. Residential Real Estate Purchase Agreement. Contemporaneous to the execution of this agreement, the parties shall enter into Residential Real Estate Purchase Agreement, a copy of which is attached hereto as Exhibit A and is incorporated herein by reference (hereinafter referred to

15.

as the "Purchase Agreement").  Seller has agreed to sell and Purchaser has agreed to purchase the premises for the amount of $35,000 provided that all rents to be paid pursuant to the residential real estate lease agreement have been fully and timely paid; and that all covenants of the residential lease agreement to be performed by the lessee have been fully performed.

The Residential Real Estate Purchase Agreement outlines the terms of the purchase.  It states that the total purchase price for the property is $35,000, consisting of a $3,000 payment and $32,000 financed by Mandyhan over ten years at 12% per annum, resulting in a monthly payment of $459.10—the same monthly payment amount described in the lease agreement.  Again, the agreement does not reference the sale of the premises as optional.

{¶ 32} Having reviewed the record, we find that the plain language of the agreements reflects a clear, unambiguous intent of the parties to transfer the property from Mandyhan to Trody through an installment contract.  The lease agreement plainly references the purchase agreement and the $3,000 down payment on the purchase of the property. Further, the monthly payments under both agreements are identical and, according to the purchase agreement, will satisfy the purchase price of the property plus the financing amount after ten years.  These terms reflect the parties' intent to transfer the property from Mandyhan to Trody through an installment contract.  As a result, the parties' agreement is unambiguous and the trial court should have given effect to that intent without review of extrinsic evidence.

{¶ 33} The trial court, instead, found that the magistrate did not err in finding that the parties' intent was to enter into a lease agreement with an option to purchase at the

16.

conclusion of that lease. The court held that the magistrate was in the best position to judge the parties' credibility as to their intent at the hearing. This ignores the fact that the magistrate, and the trial court, could only consider their testimony *if* the agreements were ambiguous. *Marco's*, 2024-Ohio-3038, at ¶ 29. Since they were not, the trial court erred in concluding that the magistrate properly relied on testimony to determine the parties' intent. Since the trial court erred in adopting the magistrate's decision finding the agreements ambiguous, we find Trody's third assignment of error well-taken.

### c. Whether the parties' agreement constitutes a valid land installment contract pursuant to R.C. Chapter 5313 is not before this court.

{¶ 34} In his second assignment of error, Trody argues that the trial court erred when it failed to consider whether the parties' installment contract had substantially complied with R.C. 5313.02, the statute that outlines the specific contents a land installment contract must contain to be enforceable. When an installment contract does not contain these minimum requirements, they may nevertheless be enforced if the agreement "substantially complies" with the statutory requirements of R.C. 5313.02. *Merivale Investments, LLC v. Tuggle,* 2009-Ohio-6502, ¶ 27 (6th Dist.). This is because R.C. Chapter 5313 is "to protect consumers by making specific information available to vendees in the land installment contract." *Id.* at ¶ 28. "Courts have voided contracts under R.C. 5313.02 where there has been material non-compliance to the detriment of the buyer." *Id.* "It is only when the omission of information required by R.C. 5313.02 is substantial enough to cause a buyer to refuse to execute the contract if he had knowledge of the facts that the contract becomes voidable." *Id.*

17.

**{¶ 35}** Here, the trial court declined to determine whether the parties' agreement substantially complied with R.C. 5313.02 because it had already determined that the property lacked a dwelling and, therefore, could not be transferred through a land installment contract under R.C. Chapter 5313. Since the trial court did not review the agreement for substantial compliance with R.C. 5313.02, we decline to make that determination for the first time in this appeal. *See Marco's* at ¶ 40 (holding that when the trial court did not decide an issue, appellate courts must "refrain from reaching a decision on those issues in the first instance."). Therefore, we find Trody's second assignment of error not well-taken as it is not properly before this court. *Id.*

### III. Conclusion

**{¶ 36}** For the foregoing reasons, we find Trody's first and third assignments of error well-taken. We find Trody's second assignment of error not well-taken. We, therefore, reverse the August 14, 2025 judgment of the Toledo Municipal Court and remand this matter with the following instructions. First, the trial court must determine whether the property includes a dwelling utilizing the appropriate standard as described above. Because we have established as a matter of law that the parties entered into an unambiguous agreement intending to transfer the property through an installment contract, if the trial court determines that the property includes a dwelling, it must then determine whether the parties' agreement substantially complies with R.C. 5313.02. If so, the trial court must enter judgment in Trody's favor as Mandyhan would be prohibited from seeking forfeiture of Trody's interest in the property though a forcible entry and detainer action and must comply with the provisions of R.C. 5313.06 and 5313.07.

18.

Conversely, should the trial court determine on remand that the property does not include a dwelling or that the parties' agreement does not substantially comply with R.C. 5313.02, it shall enter judgment in favor of Mandyhan on its forcible entry and detainer action as there is no dispute that it complied with the requirements of R.C. Chapter 1923.

{¶ 37} The parties are ordered to share the costs of this appeal pursuant to App.R. 24.

Judgment reversed
and remanded.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27.

Gene A. Zmuda, J.            _____
                                                       JUDGE
Myron C. Duhart, J.        

_____
Charles E. Sulek, J.                                            JUDGE
CONCUR.

_____
                                                       JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.